\* THOMAS CUSHING *versus* JEREMIAH GORE AND JOSEPH D. GRAFTON.

Where one had endorsed certain promissory notes for the accommodation of the makers, and before the notes were payable, apprehending the failure of the makers, had taken their note payable immediately for a greater sum than those he had endorsed, (which, in consideration thereof, he had undertaken to pay at maturity,) and commenced an action on the said note, attaching property of the promisors afterwards attached by *bonâ fide* creditors of the makers, whose debts were payable before the notes so by him endorsed, he was holden to be entitled to recover on his note, to the amount of the notes so endorsed by him.

A check drawn in favor of one who had lent money to the drawer, on a bank where the drawer was known to have no funds, and which was not expected by him to be presented to the bank, was holden good evidence to support an action on the common money counts.

THIS action was brought upon a promissory note for the sum of 3000 dollars, and a check upon one of the banks in *Boston* for 200 dollars, said to have been given by the defendants to the plaintiff. The declaration contained also the common money counts.

On the trial, at the last November term, before *Jackson*, J., the plaintiff produced the note and check, and it was admitted that they were both signed, by the said *Grafton*, with the names of *Gore & Grafton*, which was the firm under which the defendants acted as partners in a retail shop kept by them in *Boston*.

It appeared in evidence that the plaintiff had, at sundry times, endorsed notes given by the defendants, for goods bought of them at auction, and that he occasionally lent them money for a few days

at a time. The defendant *Gore* usually did the business in the shop ; and *Grafton* made purchases, and did other business abroad, and, particularly, he raised money when wanted, to pay their debts, and gave notes for the house ; and *Gore* was never known to do any of that part of the business.

On or about the 18th of January, 1817, it was discovered that *Grafton* had forged the name of the plaintiff as endorser upon sundry notes, which he, *Grafton*, had made in the name of his said house. There was no suggestion that *Gore* was in any way privy to this fraud.

As soon as the plaintiff was informed of this fact, he took *Grafton* to his counting-room, to adjust all accounts and dealings between them, and to get security for whatever might be due to him. The adjustment was made in haste, and *Grafton*, on that [ *70 ] day, or immediately after, absconded, *and had not since been seen within the commonwealth.

On that occasion, the plaintiff took from *Grafton* the note sued in this action, to enable him, by an attachment of the property or otherwise, to secure or indemnify himself, as endorser of certain notes of the defendants ; it being understood that the plaintiff was to take up and discharge those notes as they should become due , and to hold the note, then given, as good only for the amount of the others which he should so take up. But there was no evidence of any express promise to that effect by the plaintiff.

The amount of the notes so endorsed by the plaintiff was not then ascertained ; and therefore the new note was given for a sum supposed to be fully sufficient to meet the others. It was afterwards ascertained that there were three notes, which the plaintiff had so endorsed for the defendants, all which he produced on the trial, one payable in February, and the other two in March, 1817, all amounting to 1747 dollars 18 cents ; and the plaintiff claimed, on the note now in suit, that sum with interest from the respective days on which he paid the same. The note in suit was antedated, *viz.*, on the 5th of January, 1817.

As to the check, it appeared that it was drawn on the *New England* Bank, and that the plaintiff had never presented it there for payment. The defendants had never kept their cash at that bank, nor had any funds there. The plaintiff suggested that it never was intended or expected that he should demand the money upon that check at the bank, and that it was given only as a memorandum or voucher, upon his lending that sum to the defendants ; and it appeared that the defendant *Grafton*, when borrowing money for a few days, did commonly give the plaintiff a check on some bank, which *Grafton* took up on repaying the money.

The grounds of defence were, *first*, as to the note, that there was no sufficient or legal consideration for it. On this point, the judge instructed the jury, that an agreement, * by the [ * 71 ] plaintiff, to take up and discharge, at his own expense, the said notes so endorsed by him when due, was a sufficiently legal consideration for the note in suit, to the extent for which he was liable as endorser, and that it was not necessary that such agreement should have been in writing.

2. It appeared that the attachment in this suit was made on the 18th of January, 1817, and that the same goods were afterwards attached by other creditors of the defendants, upon demands which fell due before either of the three notes so endorsed by the plaintiff became due ; and the defendants contended that this operated as a fraud upon the other creditors, giving an undue advantage and preference to the plaintiff. And the defendant *Gore*, who alone appeared to defend, held himself bound, in justice to those other creditors, to take this ground of defence to the present action. On this point the judge instructed the jury that the defendants, when they were unable to pay all their debts, might, by our laws, give a preference to any one creditor, by paying or giving him security ; and that, as they might do this by assigning to the plaintiff any of their goods, so they might do it by giving a note, to anticipate the day of payment, and so enable him to attach their goods. (*a*)

3. The defendants contended that the plaintiff could not recover the amount of the check, because he had not presented it for payment at the bank on which it was drawn. On this point the judge instructed the jury that such presentment was not necessary under the circumstances of this case.

The jury returned a verdict for the plaintiff, for the amount of the check, and of the said three notes with interest. The defendants moved for a new trial, on the account of the said several opinions and directions of the judge.

*Prescott* and *Gallison*, for the defendants. The note was void, as between the original parties, for want of a legal consideration. Nothing was due at the time it was made. The defendants received no benefit. The plaintiff sustained no damage. His liability was merely contingent : if the * defendants did [ * 72 ] not discharge the debts for which the plaintiff was their surety, he might be called upon. No right of action then belonged to the plaintiff; and if he had such a right, since it was not discharged, it formed no sufficient consideration for the new promise. (1)

(*a*) Vide *Whitman* vs. *Leonard*, 3 *Pick.* 177.
(1) *Dyer*, 295, *a*, note 10, 11.— *Styles*, 330.— *Cro. Eliz.* 394, *Ward* vs *Lambert.* —

In the case of *Lewis* vs. *Gray*, (2) but for the writing signed by *Lewis*, he would have recovered the whole sum which appeared due by the note ; and in the present case, if the plaintiff is entitled to any judgment, it must be for the whole amount.

If the note in this case is considered as a promise to indemnify the plaintiff, there was still no right of action at the commencement of this suit, for the plaintiff had then sustained no damage.

The Court will see that the rights of subsequent attaching creditors, whose debts were demandable at the time of commencing the present action, will be affected, and their remedies defeated, by a judgment for the plaintiff. As it regards those creditors, the transaction is fraudulent. The defendants had no right thus to make a new creditor, for the sake of giving him a priority to other *bonâ fide* creditors.

The check could give no right of action to the payee, until it had been presented and dishonored.

*Welsh* for the plaintiff.

PARKER, C. J. It is objected by the counsel for the defendants, that there was no legal consideration for this note ; there being merely a liability, on the part of the plaintiff, to pay the notes which he had endorsed. We think, however, that such a consideration is good, and sufficient to support an express promise. Whether the plaintiff should be called upon, or eventually be obliged to pay, was contingent when he endorsed the defendants' notes ; but there is no doubt, if he had refused to endorse them without receiving a promissory note of the defendants, to enable him to secure himself when danger should be apprehended, the defendants would be prevented from denying the validity of their promise. (a)

[ * 73 ]    * In the present state of the mercantile world, it would excite great surprise, if we were to decide that a note deliberately given to an endorser, for the very purpose of enabling him to secure himself against the effect of his endorsement, would not answer the purpose for which it was intended. (b) The cases cited to the contrary are principally of grants, the consideration of which being some liability of the grantee, they have been held void. We do not think the principle applies to mercantile contracts ; and we apprehend that those cases have relation to the statutes of bankruptcy or of frauds, the grants being considered void against

2 *Roll. Abr*. 783, S. C.— *Clayton's Rep.* 38, *Legard* vs. *Linley.*— 2 *Keb.* 758.— *Str.* 94. 3 *Wills.* 13.— *Cro. Eliz.* 193.

(2) 1 *Mass. Rep.* 297.

(a) If no damage be sustained, there is no consideration for the note.— *Knapp* vs. *Lee*, 3 *Pick.* 452 — *Hill* vs. *Buckminister*, 5 *Pick.* 391.— *Amherst Academy* vs. *Cowles*, 6 *Pick.* 427.— *Mills* vs. *Wyman*, 3 *Pick.* 207.

(b) Vide *Whitman* vs. *Leonard*, 3 *Pick.* 177.

creditors.   The case from *Dyer* was decided with a view to the bankrupt laws.

But if there were any doubt of the principle, to the extent mentioned, we think that, when an endorser has, either expressly or impliedly, undertaken to pay the note by him endorsed, there can be no question that such undertaking is a good and valuable consideration for a promissory note.

The case finds that it was understood between *Grafton* and the plaintiff, that the latter was to pay the notes he had endorsed. There was no direct evidence of this ; but the jury have inferred the fact, and they had a lawful right so to do.   It might be inferred, we think, from the mere fact of a note having been given with a view to cover those endorsements ; and had the plaintiff failed to pay the notes as they became due, so that the defendants had been troubled or put to expense, we see no reason to doubt that they might have maintained an action against them upon an implied promise.

In the case of *Stevens vs. Bell*, (3) it was decided that a grant or conveyance in trust for sureties was not void for want of consideration.   There is no reason why a promissory note, given for the same purpose, should have a different rule applied to it.   In either case, if the creditor recover more than will indemnify him, he may be holden as trustee for other creditors.

* In the same case, it was decided that an attempt to   [ * 74 ] prefer one creditor to another is justifiable.   Indeed, it is the necessary consequence of our attachment laws, which give to each creditor a right to take care of himself ; and nothing is more common than for debtors, on the eve of failing, to assign property for the security of endorsers, sureties on bonds in the custom-house, and others who are thought to be entitled to favor.   Such assignments are held valid here ; nor is it an objection that the value of the property assigned exceeds the sum for which the assignee is liable, unless the transaction should appear to be fraudulent. (a) ·

On the whole, we see no objection to the direction of the judge, nor any insufficiency of evidence to support the verdict.   The transaction appears to have been *bonâ fide* on the part of the plaintiff.

He has recovered for no more than the amount of the notes endorsed by him, and which he has actually paid.   If he had recovered more, he might have been charged, as trustee, for the surplus ; or perhaps, if he had taken judgment knowingly for more than was

(3) 6 *Mass. Rep.* 339.
(a) Vide *Whitman* vs *Leonard,* 3 *Pick.* 177.

thus due to him, and had levied his execution for the amount, this might have been evidence of collusion, which might avoid his judgment, in favor of other creditors.

With respect to the check, considering the circumstances under which it was received, both parties knowing that there were no funds in the bank, and it not being intended to be presented there, we think it may well be considered as evidence of money borrowed, and recoverable on one of the money counts. (*b*)

*Judgment on the verdict.*

(*b*) *Ball* vs. *Allen*, post, 433. — *Ellis* vs. *Wheeler*, 3 *Pick.* 18.

[ *75 ]

\* THE MANUFACTURERS' AND MECHANICS' BANK *versus* JEREMIAH GORE AND JOSEPH D. GRAFTON.

Where one of two copartners obtained money upon a note, signed by him with the name of the firm, and purporting to be endorsed by a third person, payable at a future day, — and before the maturity of the note, it was discovered that the name of the supposed endorser had been forged; it was holden, that the lender of the money was entitled to his action *immediately*, as for money received to his use; and that the action well lay against both the partners, although the other knew nothing of the forgery; the money having gone to the use of the copartnership.

ASSUMPSIT for money had and received, money lent and accommodated, &c.

The habits of business of these defendants are stated in the report of the preceding case. In addition to the facts recited in that report, it appeared, in the trial of this action before *Jackson,* J., at the last November term in this county, that the defendants had an account open at the plaintiffs' bank, and kept their cash there ; but *Grafton* always attended to that part of the business, and drew all checks for money on the bank. *Gore* professed not to take any charge of that part of the business, nor to know, from time to time, what money they had in the bank ; and sometimes, when creditors called at the shop for payment of money lent, or other debts, *Gore,* if he had not cash enough to pay the debt, would desire the person to wait until *Grafton* should come in, to draw on the bank ; and *Gore* always declined to draw checks himself.

The plaintiffs claimed to recover, in this action, the amount of three promissory notes, which they had received and discounted in the following manner: The said *Grafton,* in the name of his