### CHARLES W. ROCKWELL *vs.* SAMPSON V. S. WILDER.

Where it is ascertained by partners, who are about closing their partnership concerns, that a balance will be due to one of them on a final settlement, although the exact amount of such balance cannot be ascertained, yet if the debtor partner gives the creditor partner a promissory note for a sum not exceeding the amount of the balance which will be due on a final settlement, such note is given on a good and sufficient consideration, and payment thereof may be enforced by action at law, though the balance is not struck between the partners.

ASSUMPSIT on a promissory note made by the defendant to the plaintiff for $30,000, dated June 21st 1841. The money counts were added.

The defendant's property was attached on the writ; and Dykers & Allstein, a firm in New York, creditors of the defendant, having subsequently attached the same property, filed a petition in the court of common pleas, under the Rev. Sts. *c.* 90, § 84, praying that the plaintiff's attachment might be dissolved, on the ground that the sum demanded in this action was not justly due and payable when the action was commenced. A trial of this question by jury was ordered by said court, and was had accordingly, before *Williams,* C. J. at the last March term. Said Dykers & Allstein called the defendant as a witness, who testified that he signed the said note on the day of its date, but no entry of it had ever been made in his books, because it was for an unsettled account; that he knew he owed the plaintiff more than $30,000, and thinking, from intelligence received from Europe, that he should not be able to continue

his payments, he felt himself bound in duty and honor to give this note ; that he did not then ascertain the balance due, but he knew there was more than $ 30,000 due on account of cotton which had been sold by Hottinguer & Co., the proceeds of which had all been passed to his (the said Wilder's) credit; and against which he had previously drawn bills and sold them in the market, on his own account ; that he had not seen the plaintiff for six weeks before that time, the plaintiff being absent ; that John A. Rockwell, brother of the plaintiff, was then in New York, and the witness informed him that he should stop payment, and made and delivered to him this note, at his request ; that the witness told said John A. that he owned property in Massachusetts liable to attachment, and said John A. requested him to give a mortgage on it, to secure the plaintiff, but the witness declined ; that this note was then made and delivered to said John A. for the purpose of being used and secured by attachment of this property ; that the witness failed on the 23d of June, but the fact was not generally known until 3 o'clock on that day, the hour of closing the banks.

The witness further testified, that he had had business with the plaintiff for ten or twelve years, but that all their accounts were settled, and there was nothing due on either side, in December 1839 ; that at that time, or in January 1840, they agreed upon the operations which resulted in the account filed in this action ; that the plaintiff at that time went to the South to purchase cotton, if the prices should be such as to justify it ; that he bought cotton which cost $ 951,000, for which he or his agents drew bills on the witness ; that the witness was to be interested one third in the profit or loss, and the plaintiff two thirds ; that about half the cotton was shipped to Hottinguer & Co. in Havre, in the name of the witness, and the residue to Humphreys & Biddle, in Liverpool, in the name of the plaintiff; that the witness had ceded to Hottinguer & Co. half of his interest in the cotton shipped to that house, leaving to himself only one sixth part ; that the witness reimbursed himself for his acceptances, by drafts on Hottinguer & Co., and by the plaintiff's drafts on Humphreys & Biddle in his favor, all of which were

duly paid : That the witness charged no commission for doing the business, but Hottinguer & Co. charged their commissions ; that the agreement between the witness and the plaintiff was, to be jointly interested, in the proportion of one third and two thirds, in all purchases made that season ; that the season for cotton purchases usually ends in June ; that the plaintiff ceased his purchases in April or May of that year ; that the agreement between himself and the plaintiff, as to the purchase of cotton, was to be limited to the period during which the plaintiff should remain at the South, making purchases that season ; and that he returned before the month of June in that year ; that the witness afterwards proposed to the plaintiff to be again interested, for the ensuing season, in the purchase of cotton, but the plaintiff declined to do so unless at certain limited prices named by him ; that orders for the purchase were sent to the South, but cotton, could not be bought at the prices limited-by the plaintiff, and that he therefore was not interested in the purchases made by the witness in that season : That the witness, in November or December 1840, made two small shipments of cotton to Humphreys & Biddle, consisting of about 1100 or 1200 bales, which he purchased, paid for and shipped, on his own account ; that afterwards, in March 1841, he proposed to the plaintiff to become interested in these two shipments, in the same proportion as they had been in the former shipments, and that the plaintiff assented thereto ; that the witness had not received an account of sales of these two last shipments, but had been advised of the sales and prices, and was satisfied there could not be any loss, and that there probably would be a small profit. No charge had been made nor credit given to the plaintiff on account of these shipments, because be had not received the accounts of sales from Humphreys & Biddle, and he could not ascertain the exact result ; that when he made these shipments he had probably drawn on Humphreys & Biddle for the amount of the cost, but the drafts were not special, and they had been duly accepted and paid ; that these last purchases were a separate transaction from the others, and that, independently of their joint cotton operations, the plaintiff owed a balance to the witness on

other items of the account filed :   That on the 8th of April 1841, the witness received Hottinguer & Co's. accounts, a copy of which is to be taken as part of his statement :   Said account shows a balance of $ 32,523$\frac{82}{100}$, after deducting said Hottinguer's one sixth.

The witness also testified, that he had other extensive dealings with said house of Hottinguer & Co., in which the plaintiff is not interested, and an unsettled account with them, comprehending his general business with them, at the time of the rendering and receipt of their said account.

In May 1841, the accounts of Humphreys & Biddle were received by the witness, of which a copy is also to be taken as part of his statement, showing a balance of £ 7166.00.11. sterling, profit on the shipments to them in the name of the plaintiff.   Of this balance, £ 3000 has been drawn by the plaintiff in favor of the witness, and is charged to the latter in the account filed.   The remainder of that balance is still in the hands of Humphreys & Biddle.   The witness also testified that all the cottons, purchased under the said agreement, had been fully paid for, and that the balances in the hands of Hottinguer & Co. and Humphreys & Biddle, respectively, as before stated, were the net profits of their said operations.

The plaintiff's counsel then called said John A. Rockwell as a witness, who testified, (and it was admitted by the petitioners, for the purposes of this trial,) that he was duly authorized by the plaintiff to act on his behalf in the premises, to receive the said note, and to cause this suit to be commenced ; that the note was made and delivered to him by said Wilder for the purpose of making this attachment, and that he himself came to Worcester and caused it to be made.

Upon the facts thus appearing in evidence, the counsel for the said Dykers & Allstein insisted that the said Wilder & Rockwell were partners, and that no debt was justly due and payable from said Wilder to the plaintiff, at the time of commencing this suit, because the debt sued for was not such a final balance of the partnership accounts, as would in law constitute such debt. But the judge instructed the jury, upon the facts aforesaid, that

the said note, as between the said Rockwell and the said Wil·der, was a good and valid note, and could not be avoided by the defendant, on the ground of a want of consideration ; that Dyker and Allstein, as subsequent attaching creditors, had a right to require that the true balance of the account between the plaintiff and defendant should be ascertained, and that, in stating such accounts, the defendant should be credited with his share of the profits in the hands of Humphreys & Biddle aforesaid, and that, for the balance of the account thus ascertained, the plaintiff was entitled to a verdict ; that the contract between the plaintiff and defendant, in regard to the two shipments in November or December 1840, constituted a new partnership between them, and should be regarded as distinct from the cottons previously shipped by them to Hottinguer & Co. and Humphreys & Biddle.

The jury thereupon returned a verdict that there was due and payable from said Wilder to said Rockwell, at the time of commencing this suit, the sum of $27,415·01 ; and the counsel of said Dykers & Allstein alleged exceptions to said instructions of the judge.

*Washburn & Greenough*, for the interposing creditors.

*Merrick & C. Allen*, for the plaintiff.

HUBBARD, J.  This is an action of assumpsit founded upon promissory note made by the defendant on the 21st of June 841, and given to the plaintiff for $30,000, with the common counts, and on the writ in which case certain property of the defendant was attached.

Messrs. Dykers & Allstein of New York, creditors of said Wilder, and subsequent attaching creditors of the same property, petitioned the court of common pleas to be allowed to dispute the validity and effect of the plaintiff's attachment, by virtue of the provisions of the Rev. Sts. *c.* 90.  This they were permitted to. do, and the court directed a trial by the jury on the question, whether the debt declared upon in this suit was justly due and payable when the action was commenced ; and upon the hearing of their petition, it appeared that the note was given under the facts and circumstances set forth in the report of the case

Upon those facts, the petitioners contend that the plaintiff had no right of action upon said note, at the time of the service of his writ ; but the presiding judge of the court of common pleas decided, upon the facts, as proved at the trial, that the same was a good and valid note, and could not be avoided for want of con sideration.

The petitioners rely upon the position of law, that one partner cannot sue his copartner, except for the recovery of the balance of a final account settled between them ; and they contend that in this case no such account has been settled, and therefore that the present action cannot be sustained.   But this rule of law, though generally recognized, both in England and in the different States of the Union, is not without its modifications ; and in this State, it has been decided, that though no final account has been settled, yet if there are no outstanding demands against the part- nership, and no outstanding debts to be collected, or that can be collected, so that the judgment to be rendered will be a final settlement between the partners, then such action may be main- tained.   And in the case of *Brinley* v. *Kupfer*, 6 Pick. 179, the court have extended this right, and have decided, · that if there is in fact a balance due to the plaintiff, and there are out- standing debts due from the partnership, less in amount than the balance due from the defendant to the plaintiff, and the plaintiff is willing to assume such outstanding debts, and release to the defendant the amount of such debts, then the action can be main- tained.   And the court have strongly intimated, in the case of *Williams* v. *Henshaw*, 11 Pick. 79, that where there are out- standing debts due to the partnership, if the plaintiff, before commencing his action, assigns to the other, or tenders an assign- ment of the outstanding debts due to the partnership, he may maintain his action.   So the court say in the same case, relying upon the authorities there cited, " if one partner covenants or agrees to advance a certain portion of the capital, or to perform any other specific acts, an action will lie for the violation of these express contracts, even during the continuance of the part nership."   The court further say, in the same case, " if the plaintiffs had shown an agreement on the part of the defendants

to advance one half of the money necessary to carry on their joint speculation, or a promise to repay the plaintiffs for their advances, they might well recover upon such undertaking, in the present action ;" and this, notwithstanding the concerns of the partnership were not closed.

And we are of opinion, that where one partner has received more than his share of the partnership property, and the partners are closing their concerns, and it is ascertained that a balance will certainly be due to one of them on a final settlement, although the true balance cannot at the time be ascertained, then if such debtor partner gives his note to the creditor partner for a sum within the balance which it is acknowledged will be due to him on the final settlement, such note is given upon a good consideration, and is equivalent to an express promise to pay the given sum mentioned ; and the payment of such note may be enforced at law, though the balance is not struck between them.

In regard to the note itself, we are aware that it was given to the plaintiff in consequence of the failing circumstances of the defendant, and for the purpose of affording him an opportunity to secure a just demand by means of an attachment, and thus intending to give the plaintiff a preference as a favored creditor. But independently of the provisions of the insolvent and bankrupt acts, such preferences have long been allowed by our law, as the court have had frequent occasion to determine. *Hatch* v. *Smith*, 5 Mass. 49. *Stevens* v. *Bell*, 6 Mass. 343. *Hastings* v. *Baldwin*, 17 Mass. 556. *Whitman* v. *Leonard*, 3 Pick. 179. And again, in respect to the fact of making a note for a sum certain, in place of a sum uncertain, and giving a present demand in regard to debts due but not yet payable ; such notes have been distinctly held to be legal and valid, and attachments upon them have been sustained, as well for debts not yet due, as for liabilities merely. *Cushing* v. *Gore*, 15 Mass. 69. *Little* v. *Little*, 13 Pick. 426. *Gardner* v. *Webber*, 17 Pick. 407.

But we incline, in the present case, to think that the transactions of the parties were such that the accounts, resulting from the shipments to France, may be settled between them, independently of the shipments to England. This was a limited

Rockwell *v.* Wilder.

partnership, confined to the purchase of cotton for a single sea·son, which cotton was paid for as soon as purchased and shipped ; so that no outstanding debts remained. On or after the shipment to France, Hottinguer & Co. were admitted as partners in that distinct portion of the business under the special management of the defendant, and which connexion was not dis-affirmed by the plaintiff. This part of the adventure was fully settled, the balance ascertained, the amount of profits due to Hottinguer & Co. retained by them, and the balance paid over or advanced to the defendant, for the account of himself and the· plaintiff; and this liquidation took place before the commence-ment of this suit. Upon this transaction, thus separated, a large amount was due to the plaintiff, and capable of being ascertained without difficulty ; on account of this balance the defendant made his note to the plaintiff, which constitutes, we think, a valid consideration, and an action upon it may be sustained.

In respect to the cotton shipped to Humphreys & Biddle, and which was subject to the control of the plaintiff, that property was also all sold, but whether under a *del credere* commission, or not, does not appear ; the account of sales rendered, resulting in a balance of £7166.00.11, and the whole of which was cash on the 31st of May, 1841 ; and the fact whether the payments were made at maturity, or not, might have been easily known at the time when the note in the present case was given ; and if collected, and the plaintiff was willing to assume that balance for his own account, no impediment would stand in the way of a final settlement of the accounts resulting from their limited part-nership. The second agreement referred to in the facts stated was not embraced within the original contract.

We think, therefore, that a bill in equity might have been sustained by the plaintiff against the defendant, requiring an account, and that such bill might have been inserted in a writ of attachment, by virtue of the provision of the Rev. Sts. *c.* 90, § 117, and the same attachment have been made and sus-tained as in the present suit, which would have resulted, substan-tially, in the same balance as that returned by the jury in this case ; a difference therefore merely in the form of action.

A question was started by the plaintiff, whether the petitioners had brought themselves within the provisions of the Rev. Sts. c. 90, §§ 83 – 85 ; but having come to the conclusion that the action can be maintained, for the reasons given, it is unnecessary to determine that question. The exceptions are therefore over-ruled, and the petition of the second attaching creditors must be dismissed with costs.