## Case No. 17,509.

### WHETMORE et al. v. MURDOCK.

[3 Woodb. & M. 380.] [1]

Circuit Court, D. Massachusetts.    Oct. Term, 1847.

INSOLVENCY—FRAUDULENT TRANSFERS—ACCOMMO-DATION ACCEPTANCES—NEW TRIAL—NEWLY-DISCOVERED EVIDENCE—DILIGENCE.

1. Where one has accepted drafts to accommodate another, payable at a future day, he may take notes payable at that day as security. And if, in the mean time, the debtor is likely to fail, he may exchange these notes for others on demand and sue them before the drafts are paid, and attach property as security. The exchange may be agreed on and the new notes taken and put in suit at once, if the old ones are agreed to be returned, and are in fact soon returned.

2. But the parties, under such circumstances, being relations, and the debtor going into insolvency the next day after the new notes are executed and the attachment made, are, with other circumstances, some evidence of collusion and want of good consideration.

3. A verdict given against the validity of the new notes will not, in such case, be set aside as against the weight of evidence.

4. Nor will it be set aside on the ground of newly discovered evidence, if at the trial it was not proved directly that the old notes had been returned, though circumstances were shown from which it might be inferred, but since the trial the insolvent has disclosed that the notes were in fact seasonably returned to him.

5. His admissions, or statements as to such a prior transaction, made since his property was transferred to assignees, and in a suit which they defend are not competent evidence, and much less are they sufficient to justify a new trial, when the plaintiffs decline to swear that these facts are newly discovered by them.

6. Such assignees may defend on the ground of fraud or want of consideration, and in cases where the insolvent could not, as they represent the other creditors in this, rather than the debtor.

7. Nor will a new trial be granted for the concealment at the trial of the actual return of the old notes, unless that fact was known to the assignees, and concealed by them and not by the insolvent, as the assignees are the virtual defendants, and the debtor here was in feeling friendly to the plaintiffs, rather than the defendants.

8. Due diligence required, in such a case, that the plaintiffs should have inquired of the debtor and obtained and used the old notes at the former trial.

This was an action of assumpsit on two promissory notes, made by the defendant

1 [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

[Warren Murdock] to the plaintiffs [David W. Whetmore and others], one dated July 3d, 1846, for $1236.88, and the other July 8th, the same year, for $1682.15. The plaintiffs were citizens of New York, and the defendant of Wareham, Massachusetts. The general issue was pleaded, and a special notice filed, requiring proof of the execution of the notes and their consideration and setting up payment of them. It appeared in evidence that property had been attached the 26th of August on the writ which issued August 25th, 1846, and that the defendant went into insolvency under the laws of Massachusetts the day of the attachment, and a warrant issued to a messenger and was published the 28th August, 1846. The assignees were admitted to defend the action, and sought to avoid a recovery here on the ground of fraud and collusion between the original parties, as well as for the special reasons set up in the notice under the plea. The signature of the defendant was proved at the trial, and the following facts as to the consideration. The defendant and one of the plaintiffs were brothers, and the latter were in the habit of raising money by the sale of notes for the defendant in New York. On the 3d of July, 1846, the defendant drew a draft on the plaintiffs for $1200, payable in ninety days, which they accepted for his accommodation, and received a note from him of the same date and amount, as security for their acceptance, and paid the draft at maturity. On the 8th of July, 1846, the defendant drew another draft on them for $1700, payable and secured and accepted in like manner. It further appeared that one of the plaintiffs was absent from New York in August, 1846, and on the 28th, 29th or 30th, returned with the two notes now in suit, being of the same date with the former notes, of like amount, deducting interest for the sixty days, and payable on demand. It was next shown that an entry of these notes was made in their books on a blank space under the month of July, stating that they had been received, and that the other prior notes were returned to the defendant. The bookkeeper testified that he believed the others were enclosed in a letter and put in the post office directed to the defendant, but was not entirely certain of this. He had never seen them since in possession of the plaintiffs, nor had they ever, to his knowledge, been discounted for them by others. The entry was dated July 31st, though it was actually made August 31st, and he testified that it was his custom to leave some blank space at the end of each month, in order to make entries under the proper month of such matters as had been forgotten, or were not then completed, but belonged to the business of that month. Both of the acceptances were paid by the plaintiffs when they became due. The judge instructed the jury that if they believed the original parties had agreed that new notes on demand should be given for

the first ones, which were payable in sixty days, and the latter be returned, there was a good consideration at their execution for the new notes, if the transaction was bona fide, and if the old ones were in truth afterwards returned on the parties reaching home, and if the drafts accepted for the old notes were duly paid at maturity by the plaintiffs. The case went to the jury on this instruction, the counsel for the assignees insisting that on the evidence there was no valid consideration shown by a seasonable return of the old notes, or any agreement proved to be made in respect to them, and that the whole execution of the new notes was collusive and with a view to defraud the other creditors by having property attached under process from the courts of the United States, and thus withdrawn from distribution among the other creditors, under the insolvent system of this state. The trial was had here before Sprague, J., at an adjournment of the October term, 1846. [Case unreported.] The jury returned a verdict for the defendant, and the plaintiffs moved to set it aside for the following reasons: (1) That it was against the weight of evidence. (2) That new evidence had been discovered. Subsequently, in December, 1846, a third cause was assigned: That the original notes had been seasonably returned to the defendant Murdock, but the fact concealed at the trial by the assignees.

R. Fletcher, for plaintiffs.
T. Coffin, for assignees.

WOODBURY, Circuit Justice. There is no cause assigned here for a new trial on account of any misdirection by the court. Because this charge was in point of law quite as favorable to the plaintiffs, if not more so, than can in some respects be vindicated after mature consideration. But the verdict being against the weight of evidence is the first ground suggested for a new trial. This objection relates to the evidence as to the consideration of the second notes, it being either the first notes then agreed to be returned, and soon actually returned, or it being a collusion or fraud to injure other creditors, and hence without any good consideration. On the plaintiff's side, the proof as to the consideration came from a single witness, the clerk. He was not present at the agreement, and testified only to facts, from which it was inferred—such as the new notes being brought back, the old ones believed to be returned, no claim since made on them, and they never being discounted, to his knowledge. On the other side, several circumstances attending his testimony were urged as throwing discredit on him. Beside this, the absence of any witness who was present at the agreement, so as to prove it directly, as well as the facts that the parties were nearly related, and one about to fail, and the supposed change of notes made just before going into insolvency, and altered so as to be put in suit the same day, when other-

wise they could not have been, and other large mutual claims then existing, and a suit on them brought at the same time, were all urged against the fairness and validity of the case, on the whole matter connected with it. Moreover, the antedating of the last notes, and the insertion of the transaction on the books under the month of July, when it really occurred in August, were urged as further evidence of unfairness. It would be difficult to say here that there were not important facts to be weighed by the jury operating on both sides, and that the credibility of the only witness was not really in question, and to be weighed also by them. When this is the state of a case, a new trial is seldom proper, because the verdict may by the judge be supposed to be against the weight of evidence. See cases in Fearing v. De Wolf [Case No. 4,-711], and Macy v. De Wolf [Id. 8,933]. Under such circumstances the jury, and not the court, are to hold the balances. Much less are we able to say that on the whole case, as appearing at the trial, the jury made a clear mistake, or indulged in a clear abuse of their power, one of which is usually necessary to justify setting aside a verdict when recovered, because it is against the weight of evidence. See, also, Aiken v. Bemis (at this term) [Id. 109].

The second ground assigned for a new trial, is newly discovered evidence. This consists of matter since disclosed by the insolvent in a bill of discovery brought against him by the plaintiffs. He admits there that the agreement to return the old notes was as set up at the trial, and that they were returned soon after, and, as appears by an express post mark on the envelope at New York, that was done on the 31st day of August, 1846. There is no doubt in our minds that this matter so disclosed is important, but the difficulties concerning it are, was it competent evidence, situated as this case is? ought it not to have been discovered before the other trial, and was it not mere cumulative testimony? It must be recollected, that though the insolvent is a party on the record, this action is defended by his assignees. Now if the insolvent was still to be considered as the party, so as to make his subsequent confessions or statements evidence, it would violate the sound principle that a party in interest is not to be affected by the confessions of a nominal party after the latter ceases to be interested, and this is known to the other side. Cow. & H. Notes to Phil. Ev. pt. 1, note 172; 1 Johns. Ch. 51; 2 Johns. Cas. 121, 258; 1 Johns. 531; [McNutt v. Bland] 2 How. [43 U. S.] 14; 4 Johns. 403; 3 Johns. 425; [Bridges v. Armour] 5 How. [46 U. S.] 91; 12 Johns. 343. So it is well settled that the statement of a bankrupt after his bankruptcy, and after the property has vested in a messenger or assignees, and he in respect to that has become dead, or civiliter mortuus are inadmissible. After that he cannot be a witness, or his confessions be competent to affect the previous title. See Carr v. Gale (Me.: May Term, 1847) [Case No. 2,435] and cases in Notes to Phil. Ev.

p. 164; see cases in Bridges v. Armour, 5 How. [46 U. S.] 94; 5 Durn. & E. [Term R.] 513; 1 Esp. 330; 1 Starkie, 60; 7 Cow. 174; 1 Greenl. Ev. 498. This seems particularly reasonable in a case like the present, where the insolvent is related to the other party, and is charged with collusion with them to defraud his other creditors. and hence is hostile to the course now pursued by his own assignees. It would be very extraordinary, either in law or equity, if an insolvent thus situated could be allowed by subsequent statements or admissions to impair or affect the right of others. And though some of the English cases seem to admit such confessions, yet the facts were in some different and the current of American cases is entirely the other way. See those in notes to 2 Phil. Ev. 164; Lewis v. Long, 3 Munf. 136; [Welch v. Mandeville] 1 Wheat. [14 U. S.] 233; [Mandeville v. Welch] 5 Wheat. [18 U. S.] 227; Corser v. Craig [Case No. 3,- 255]; Bholen v. Cleveland [Id. 1,381]; Green v. Darling [Id. 5,765]; [Wheeler v. Hughes] 1 Dall. [1 U. S.] 23; [Van Horn v. Harrison] Id. 139; [Inglis v. Inglis] 2 Dall. [2 U. S.] 49; [Field v. Biddle] Id. 172; 1 Mass. 117; 5 Mass. 210; 8 Mass. 465; 9 Mass. 337; 10 Mass. 316; 13 Mass. 304; 9 Pick. 202; 2 Greenl. 143; 3 Greenl. 346; 2 N. H. 39; Simonton v. Boucher [Case No. 12,877]. Thus a partner, after dissolution of the partnership, can make no admissions to bind others. 9 Cow. 420; 11 Pick. 331. It is laid down also, that a disclosure obtained by a bill of discovery, must be obtained before a verdict or hearing, in order to be of any avail. 3 Johns. Ch. 351; 1 Vern. 176. But I am inclined to think that if the disclosure was otherwise competent, this objection ought to be overcome by setting aside the first verdict, and then the disclosure would be in season before a second trial.

There is another objection, that this evidence might have been discovered before the other trial by the use of due diligence. Because it was known to a relation, a party concerned in this very business, a person supposed to be friendly and assisting the plaintiffs in their recovery, and the one of all others, who, being presumed to know all about the matter, as one party to it. should have been inquired of as to the fact. What fortifies this view, is the want of any affidavit that this knowledge of the return of the notes is new. It must be in fact new, and if new. there still should have been due diligence to discover it sooner, and if not exercised. a party failing to do it must abide by his neglect and his loss. See cases before cited; 15 Johns. 293; 7 Mass. 205. This evidence seems, also, to be strictly cumulative. though that is often a very difficult point to settle judicially. It is to the same particular facts, the agreement to exchange the notes and the early fulfillment of it, and not to subordinate or different points. It is the same kind of evidence by parol. and if not cumulative, it surely would be difficult to say what is. See Fearing &

Macy's Cases, before cited; see Aiken v. Bemis [supra]; Alsop v. Commercial Ins. Co. [Case No. 262]; Ames v. Howard [Id. 326].

The other point made for a new trial since the disclosure, that the defendant knew the notes were returned and concealed them at the trial, might apply, and ought to, probably, if the defence was conducted by Murdock. Courts will not allow a verdict obtained by trick or deceit to stand. Grah. New Trials, 56; 1 Burrows, 352. But it must be again called to mind that the defence was conducted by the assignees of Murdock, and not himself. That it is not proved that they or their counsel knew at the trial of the return of the notes or concealed them. The plaintiffs have not even filed any affidavit to their belief in that fact, and hence the whole ground of this objection fails. The knowledge of this fact seems to have been with one friendly to the plaintiffs, and likely to have disclosed it to them, rather than being with the assignees. Nor can it be argued that the latter must stand like the insolvent in such defences, and be allowed to do nothing, which he would not be. On the contrary, if they did stand like him, little use would result from their being admitted to defend in any supposed collusion or fraud by him. So far from standing alike in that class of cases, they can avoid for fraud or collusion what he could not, because having been a party to it. But they in avoiding it do not represent him merely, but the creditors. See cases in Leland v. The Medora [Case No. 8,237], and in Carr v. Gale [supra].

Upon this whole case, then, we are not prepared to say that the jury have apparently decided wrong and from any prejudice or bias. as is argued against non-resident suitors. This is not one of those cases where the plaintiffs obtain an advantage simply by suing in the courts of the United States. Because if the contract was made in New York, or was to be performed there. having originally belonged to residents there, as the facts concede, it ought not on sound principle to be affected by the insolvent law, though prosecuted in the courts of Massachusetts, much less in this court. The plaintiffs thus situated, should have an advantage always and everywhere, as to the court. Savoye v. Marsh, 10 Metc. [Mass.] 594; Cook v. Moffat, 5 How. [46 U. S.] 308. Their contract was not made to be governed by the laws of Massachusetts. but of New York. where the promisees resided, and where it was to be fulfilled. Fiske v. Foster, 10 Metc. [Mass.] 597. It is only where a demand has been transferred to a foreign resident. when not belonging to him originally. that jealousies should be indulged of a design to evade the equality of the state insolvent system, and a close scrutiny made into the truth of the transaction. and where juries might be expected to lean against plaintiffs. Bradley v. Currier [Case No. 1,777]. If they did this in the present case merely because the creditor was a non-resident. and had always been. and hence was not contracting with a view to

Massachusetts laws, by a contract elsewhere made, and to be performed elsewhere, it was short-sighted. if not illiberal. And I should be inclined to think, on all the circumstances and the course of argument said to have been pursued at the trial, that the jury rather felt strong doubts whether the only witness testified fully and fairly all he knew, and whether in truth there was not a collusion or fraud in giving new notes on demand, instead of others not due, and doing it in Massachusetts on the eve of a failure by the promisor, when the other notes were not present, and with a view to enable a suit to be at once brought and property secured by attachment before others interfered, and before any payment had in fact been made by the plaintiffs on the drafts which they had accepted. And when, beside all this, the plaintiffs had claims of the insolvent in their possession to a large amount, which they afterwards collected. See the next case; see Alsop v. Commercial Ins. Co. [supra]. Now, though securities running to a future time may be exchanged for those on demand (Cushing v. Gore, 15 Mass. 69), yet it opens a wide door to doubt and suspicion if exchanged under all the circumstances here indicated; and by most bankrupt laws, if done to aid in an attachment on the eve of a failure, it would be a preference of one creditor over another in contemplation of bankruptcy not to be upheld (Ashby v. Steere [Case No. 576]). Even the insolvent law itself (St. 1838, c. 163, § 10), makes a preference of one creditor culpable so as to prevent or avoid a discharge. We do not feel entirely satisfied, therefore, that the jury erred here in their conclusion; and, for the reasons already stated, we think the motion for a new trial cannot be granted.