## PENNINGTON *vs.* WOODALL.

1. In a suit against a third person by the grantee in a deed of trust to recover the property conveyed, it is not necessary to prove the consideration of the deed, until the defendant has shown that he claims as a purchaser from or creditor of the grantor.

2. Where it becomes necessary to prove the consideration of a note, the most regular mode of proceeding is to introduce the note in evidence first, and then go on to show its consideration.

3. Until the creditor shows a judgment or execution, he is not in a condition to question the validity of a deed of trust executed by the grantor.

4. In a contest between the trustee in a deed of trust and a creditor of the grantor, the introduction of evidence by the latter, tending to show the consideration of the deed, will not authorise the court to charge the jury, that it is unnecessary for the trustee to prove the consideration. The effect of such a charge is to place the burden of proof on the wrong party, and thus to mislead the jury.

5. If a security in good faith assumes the payment of the debt, on which he is liable, it is a valid consideration for a deed of trust executed to him by his principal.

6. The validity of a deed of trust is not affected by the fact that one of the items, of which the debt secured is composed, consisted of usurious interest, which the creditor had in good faith been compelled to pay to a third person, for the purpose of replacing money, that the grantor had borrowed from him and failed to return.

7. If a deed of trust is intentionally made to secure to the creditor a larger amount than is justly due to him, it renders the deed void, but a miscalculation, mistake, or unintentional error will not vitiate it.

Error to the County Court of Sumter. Tried before the Hon. Geo. F. Smith.

VARY, for the plaintiff in error.

R. H. & J. L. SMITH, for the defendant.

PARSONS, J.—Woodall brought his action of detinue against Pennington in the court below, to recover a negro woman and her child, to which the defendant pleaded *non detinet.* The bill of exceptions shows that Woodall on the trial introduced a deed of trust executed by Calvin Dees, of the first part, said Woodall of the second part, and Alman James, of the

third part, bearing date the 27th day of January 1846, which was duly acknowledged and recorded—whereby Dees conveyed the negro woman in controversy to Woodall, as trustee, to secure the payment of thirteen hundred and thirty dollars, which Dees by his promissory note owed to James, which note bore even date with the deed and was payable, with interest, on or before the first of January 1847. The deed provided that the property conveyed was to remain with Dees, until a failure of payment according to the note; and in that case the same to be taken possession of and sold by Woodall, after giving the notice stated in the deed, to the highest bidder. Woodall then proved the execution of the note and its existence at the time the deed was executed. Woodall next offered to read the note to the jury, to which Pennington objected, on the ground that the consideration had not been proved and no offer made to prove it. This objection was overruled, and we think correctly. It was not necessary then to prove a consideration, as it did not then appear that Pennington claimed as purchaser from or creditor of Dees—but if it had been necessary to prove a consideration, it would have been also necessary to give the note in evidence, and the most orderly mode of doing so was to introduce one piece of evidence at a time. Woodall then proved that Pennington had these negroes in possession at the time when this suit was brought, and that Dees, at the time of the execution of the deed, was indebted to "the commissioners of sixteenth section," of whom Pennington was one, and also gave in evidence a bill of sale from the sheriff of Sumter county, in the following words: Rec'd, Livingston, Ala. of Isaac Horn and Abraham Pennington, the sum of seventy-five dollars, in full of a negro woman named Maria, about 30 years old, and her infant child, whose name is unknown, levied upon as the property of Calvin Dees, and sold by me on the first Monday in January 1847, under and by virtue of an execution in my hands in favor of Wm. Woodward & Co. et al., Commissioners, &c. against said Dees et al. Given under my hand and seal, this 4th day of January 1847—James H. Thompson, late sheriff of Sumter county. Woodall also proved that Dees, at the time of executing the deed and for some time before, had possession of these negroes, and the value of each of them and of the hire—also, that Dees was on the eve of insolvency in January 1846,

and from the time of executing the deed has been insolvent, and here Woodall rested his case; and it appears by the bill of exceptions that Pennington demurred to the evidence, and that his demurrer was overruled. As there was no proof of a judgment or execution, except as stated already, it is clear that Pennington could not claim as purchaser under an execution, nor does he appear to have been a judgment or execution creditor of Dees—not so, at least, by any legal evidence. Hence he was not in a situation to demur to the evidence, or to question the validity of the deed of trust. The parties appear to have gone on with the cause afterwards, as if there had been no demurrer; and Pennington, it appears, took the burthen upon himself. He gave evidence tending to show the different items that constituted the consideration of the note, which was secured by the deed, and thus he enabled himself to assail some of them. There was finally evidence which placed Pennington in a situation to contest the validity of the deed, and this brings us to the first charge of the court, which was that it was not necessary for Woodall to prove the consideration of the note. It is admitted by the plaintiff's counsel that this was erroneous, but he contends that there was no injury produced by the error, as Pennington had himself given evidence of the consideration. But we think that did not cure the error—it was placing the burthen on the wrong party, who might be looked to for more evidence than under other circumstances might have been sufficient.

Pennington asked the court to charge (in reference to some of the evidence) that if at the time of the execution of the deed, Dees was liable as principal, and James as security, on notes to third persons, and if the note mentioned in the deed was given in part consideration of James' liability as such security, before he paid the money, then the deed was fraudulent and void as to creditors; which charge, as asked, the court refused to give, but charged that if they believed that there were any such debts and that James had paid them, even since the commencement of this suit, it would sustain the consideration of the note. Our opinion as to this, is, that if James undertook in good faith to pay those debts, that was a valid consideration, as far as it extended, for the deed, and the deed was not rendered void by his failure to pay at any particular time.— Surely, if a surety finds his principal in failing circumstances,

he may seek indemnity, and if he can get it by assuming the debt, or even by assuming other debts, it is perfectly fair and lawful for him to do so; and this is the case whether he assume them in writing or verbally, so that it is done honestly and without intention to defraud any one. The next of Pennington's exceptions is disposed of in the last remarks upon his exception to the first charge.

The next matter of exception requires an explanation. It appears that Dees, before the date of the deed of trust, was indebted to James; that he gave his note to James for the amount, and to secure the payment executed a deed of trust upon the the same property, but that the trustee had failed to have the deed recorded within the time prescribed by the statute, and that for this reason Dees and James agreed to exclude the amount of that debt in the note secured by the first mentioned deed, and this was done accordingly, at which time the unrecorded deed was destroyed and the note thereby secured was surrendered. We see nothing in this part of the case to affect the validity of the deed in question.

The next matter that we have to decide is stated by the bill of exceptions thus—"There was an execution against said Dees and he wanted to borrow some money of James to pay it, and James was willing to loan him the money, if he could have it returned by a certain time, so that he could pay an execution that was or would be against him, James; and Dees promised James to return it by the required time, and if he failed, agreed to pay whatever amount James had to pay to effect a loan to him for the money—Dees failing to return the borrowed money, James negotiated a loan at 15 or 16 per cent., making the amount of interest $75, and said $75 formed a part of the consideration of the note for $1,330." In relation to this, our opinion is, that as James made nothing, so far as appears, and never designed to make anything by the transaction, but did no more than to save himself, it does not affect the validity of the deed of trust in a controversy between the parties to this suit. If any of the items of indebtedness, (to refer to another part of the bill of exceptions,) which made up the $1,330, were knowingly overcharged and intended as a fraud upon the creditors of Dees, that would make the deed void, but a miscalculation, a mistake or any unintentional error would not have that effect. As the

judgment is to be reversed, the next judgment for the plaintiff below, if any, can avoid the error assigned as to the present judgment. The present judgment is for the negroes only, without saying anything as to their value, if they cannot be had. This error was to the prejudice of the plaintiff below, but the legal forms had better be pursued.

Let the judgment be reversed and the cause remanded.