## WATSON vs. TOOL & NICHOLSON.

[TRESPASS AGAINST SHERIFF FOR ILLEGAL LEVY OF ATTACHMENT.]

1. *Irrelevant evidence in rebuttal.*—The admission of irrelevant evidence, in rebuttal of irrelevant evidence, is, at most, error without injury.

2. *Relevancy of evidence rebutting fraud in execution of conveyance.*—In trespass against a sheriff, for levying an attachment on a stock of goods claimed by the plaintiffs under a conveyance from the defendant in attachment, which conveyance is impeached for fraud by the defendant; the defendant having proved that, about the time of

the execution of the conveyance for the stock of goods, the debtor also conveyed all his other property to the plaintiffs, taking their notes for the purchase-money, and having adduced other evidence of fraud in the execution of the conveyances, it is competent for the plaintiffs, in rebuttal, to prove that the proceeds of these notes were used by him in payment of pre-existing *bona-fide* debts, and that the plaintiffs had paid the debts which, by their contract with him, they had bound themselves to pay ; and the fact that these payments were made after the levy of the attachment, and after the institution of the suit, does not affect the admissibility of the evidence.

APPEAL from the Circuit Court of Choctaw.

Tried before the Hon. C. W. RAPIER.

THIS action was brought by Alfred Tool and Charles Nicholson, merchants and partners in trade, doing business under the firm name of Tool & Nicholson, against Clement L. Watson, to recover damages for the defendant's tortious act, as sheriff, in levying an attachment against William Nicholson, on a stock of goods which the plaintiffs claimed, but which had formerly belonged to W. & C. Nicholson, a mercantile firm composed of said William and Charles Nicholson. The plaintiffs derived title under a conveyance, dated the 28th June, 1856, by which William Nicholson transferred his interest in the stock of goods to said Tool ; which conveyance the defendant sought to impeach on the ground of fraud. The only plea was the general issue, "with leave to give in evidence any matter that might have been specially pleaded."

On the trial, as appears from the bill of exceptions, the plaintiffs introduced as a witness one William L. Mitchell, who, on his direct examination, testified, that he had been the clerk of the late firm of W. & C. Nicholson, and in the latter part of June, 1856, had taken an inventory of their stock of goods, notes and accounts ; that this was done at the request of said partners and of Alfred Tool, and was completed prior to the 28th June ; that on the 28th June, after the inventory had been made out, William Nicholson and Tool agreed upon the terms of a contract, by which the former sold and transferred to the

latter his entire interest in all the partnership effects, and mutually promised to meet at the house of Charles Nicholson on the morning of the 30th June, (which was Monday,) when and where witness was to meet them and write the conveyance; that he saw Tool behind the counter on the evening of the same day transacting business, and also saw a notice posted on the door of the storehouse, stating that the firm of W. & C. Nicholson had been dissolved, that William Nicholson had sold out his interest to Tool, and that the business would be in future conducted under the firm name of Tool & Nicholson; that the parties all met at the house of Charles Nicholson on the Monday morning following, at which time and place the conveyance was written by witness, and executed by the parties; and that he dated the conveyance on the 28th instead of the 30th June, not by the direction of the parties, but because the terms of the contract were settled on that day. The conveyance referred to, which was signed by said Mitchell, and two other persons as attesting witnesses, and was attached to the bill of exceptions as an exhibit, is as follows:

"I this day sell and transfer unto Alfred Tool all my interest or property to the store of W. & C. Nicholson, together with all books, notes and accounts which I have, jointly with Charles Nicholson, or individually, upon his paying the following notes and accounts: one-half of the indebtedness of W. & C. Nicholson, amounting to ten or twelve thousand dollars, the larger portion of which is due in New York on the first of next year; pay note to J. M. Dansby, for nine hundred and twenty dollars, and note to Boswell Turner, (on both of which he is security,) Dade, Huxthal & Co. sixteen hundred and sixty-four dollars, balance of note due Ann W. Vance, and two notes due Allen Yates, for about fifteen hundred dollars; and the said Alfred Tool agrees to exonerate me from all liability on the above named notes; and I hereby sell and deliver unto him the above named interest in all books, papers, notes, accounts and store. Given under my hand and seal, this the 28th day of June, A. D. 1856.

WM. NICHOLSON, [L. S.]"

"The plaintiffs then proposed to show that the debts mentioned in said conveyance had been paid by them. The defendant objected to this evidence; his objection was overruled, and he excepted. The witness was then asked, if the New York creditors mentioned in said conveyance had been paid; and replied, that said creditors had made him their agent in regard to said claims, and had forwarded them to him, with full power and authority to accept in full settlement of them the notes of the new firm of Tool & Nicholson; that he, as the agent of said creditors, in the latter part of July, 1856, took from said Tool & Nicholson, in full settlement of the notes held by said creditors, new notes payable on the 1st January, 1857, and enclosed them to said creditors; and that all of said notes had since been paid by Tool & Nicholson, except a part of one of them, to pay which the sheriff had that day sold Tool's property. The defendant objected to the testimony of said witness in reference to the payment of said New York creditors and the manner of it, on the ground that it relates to transactions subsequent to the sale of William Nicholson's interest in said stock of goods to Tool, and subsequent to the bringing of this suit, and was irrelevant; but the court overruled the objection, and admitted the evidence; to which the defendant excepted.

"Said Mitchell testified, on cross examination, that the goods purchased in New York, embraced in the sale by William Nicholson to Tool, cost $9,300; that the old stock of goods on hand was valued in the trade at $4,000; that the old debts due to said W. & C. Nicholson amounted to $2,050; the accounts due for sale of goods from the 1st to the 28th June, 1856, to $5,773, and the notes and accounts due to William Nicholson to $2,428;" that no note or writing of any kind was signed by Tool at the time the conveyance from William Nicholson was executed; that the parties all went back to the store immediately after the execution of the conveyance, and there found the deputy sheriff, who said that he had come to levy an attachment on William Nicholson's property; that Tool then exhibited the conveyance from William

Nicholson, and claimed the stock of goods as belonging to himself and Charles Nicholson; and that the deputy sheriff thereupon levied the attachment on a carriage, some horses, and other articles of inconsiderable value, but made no levy on the stock of goods, and returned to his principal for instructions. The court allowed the defendant to further prove, on cross examination of the witness, against the plaintiffs' objection, that on the 1st July, 1856, William Nicholson conveyed to Tool the tract of land on which he resided, which contained about eight hundred and twenty acres, and was worth about seven dollars per acre; that the consideration expressed in the deed was $10,000; that on the same day said Nicholson also sold to Tool a negro girl named Viney, at the price of $900, (for which Tool gave his note,) and his entire stock of cattle, furniture, &c., to Tool and Charles Nicholson. The bill of sale for the cattle and furniture, which was produced by the witness, recited a consideration of $900, and conveyed all the grantor's household and kitchen furniture, "except that which is allowed me [him] by law." The witness further testified, that these conveyances embraced all the property of which William Nicholson was then possessed, except that on which the deputy sheriff had levied an attachment as above stated; that William Nicholson was at that time very much embarrassed, if not insolvent; that he and his family continued to reside, as before, on the tract of land conveyed to Tool, and remained in possession of the furniture; that the girl Viney went into Tool's possession after the sale, but subsequently returned to the residence of said Nicholson, and continued to wait on his family as a house-servant, until the spring of 1857, when she was sold by Tool, in the presence of said Nicholson, to one Lang; that Tool was worth about $5,000 at the time of these transactions, and was engaged with witness in the business of tanning; that Charles Nicholson was then worth about $10,000, but his wife also owned a considerable estate, and he made from eighty to one hundred bales of cotton annually.

"Said witness was asked by plaintiffs, on his rebutting

examination, if he knew what William Nicholson did with the note given him by Tool for the girl Viney; and answered, that said note was transferred by William Nicholson, in the winter of 1856–7, to one of his creditors named Lang, and was afterwards paid by Tool by the sale of Viney to said Lang. To this question and answer, each, the defendant objected, on the ground that the same was irrelevant, and was *res inter alios acta*, and that it was not competent for the parties, by their subsequent acts, to make valid their previous transactions which were void as against attaching creditors; and, on these grounds, moved the court to exclude said testimony from the jury. The court overruled the objections, and refused to exclude the evidence from the jury; and the defendant excepted. The plaintiffs also asked said witness, what William Nicholson did with the notes and drafts which he received from Tool and Charles Nicholson, for said land, cattle, furniture, &c., above mentioned; and in reply, testified to several payments made by said William, by means of said notes and drafts, to some of his creditors, in the latter part of the year 1856, and in the beginning of the year 1857. To this question and answer, each, the defendant also objected, for the reasons aforesaid, and excepted to the overruling of his objections."

William Nicholson, the defendant in attachment, was afterwards introduced as a witness, and was permitted to testify, against the defendant's objections, to payments made by him in 1856–7, with the proceeds of the notes received by him from Tool and Charles Nicholson, on *bona-fide* debts, for which Charles Nicholson was also liable, either as partner with William or endorser for him; and to the admission of this evidence an exception was reserved by the defendant.

The rulings of the court on the evidence, to which, as above stated, exceptions were reserved by the defendant, are the only matters assigned as error in this court.

A. R. MANNING, for appellant.—The effect of the rulings of the court below, in admitting the evidence to which the appellant objected, is to enable parties who are

charged with an act fraudulent towards creditors, after their transactions have been assailed as fraudulent, to manufacture evidence in their own behalf, to be used in a suit already instituted.   Such subsequent acts belong to the same class of evidence as subsequent declarations of a party, and are so treated in the text-books.   "It is a most general and extensive rule, that all a man's acts and declarations shall be admitted in evidence, whenever they afford any presumptions against him," because such acts and conduct frequently afford presumptions as strong as express declarations.—Starkie on Evidence, vol. 2, p. 29. In such a case as this, a man would not be permitted to offer his own subsequent declarations in evidence, in order to maintain a suit in his favor, or to defend a suit against him ; nor should be permitted to prove his subsequent acts for a like purpose.   "If such proof were allowed, there would be no end to the expedients to which men would resort to fabricate testimony, so as to meet the various exigencies of their defense."—Falkner v. Leith & Jones, 15 Ala. 10 ; also, 1 Phil. Ev. (C. & H. Notes,) 774– 76.  "On the question of fraud in a conveyance of per- sonal property, evidence that the vendee afterwards con- veyed a portion of it, with other property, to a creditor of the vendor, as a security for the debt, (the vendee also being liable therefor as surety,) is inadmissible to rebut the evidence of fraud."—Kimball v. Thompson, 4 Cush- ing, 441.   All the transactions proved were *res inter alios acta*, and, on that account, ought to have been rejected.— 1 Phil. Ev. (C. & H. Notes,) 748.

WM. BOYLES, *contra*.—1. The contract of sale was author- ized by law.—14 Ala. 263 ; 18 Ala. 316 ; 2 Chitty's Pl. 4. If Tool was bound in law to pay the debts which he assumed to pay at the time of the sale and delivery of the goods, then the sale had the same validity as if the money had been paid at the time.   It is a settled rule of law, that if A. promise B. to pay a sum of money to a third person, and this promise is founded upon a sufficient con- sideration, such third person may maintain an action on the promise.—8 Porter, 333 ; 14 Ala. 265 ; Peters' C. C.

Watson v. Tool & Nicholson.

169; 5 Blackf. 179. The creditors accepted Tool's promise, and he paid the debt.—17 Ala. 687.

2. If the contract of sale was authorized by law, the payment of the consideration could be shown, especially where fraud is relied on as a defense.—5 Stew. & P. 410; 12 Ala. 24; 15 Ala. 13. The amount of the consideration is not important, nor is it necessary that it should appear on the face of the contract, as it may be proved *aliunde.*—24 Vermont, 189.

3. The court did not err in permitting the plaintiffs to prove the *bona fides* of the sales made after the consummation of the sale in controversy. The evidence of these sales was brought out by the defendant, against the plaintiffs' objection. Where a part of a transaction has been elicited from a witness on his direct examination, the opposite party has a right to inquire into all the facts and circumstances connected with it, although they might not be admissible as independent testimony.—18 Ala. 625; 24 Ala. 9; 22 Ala. 476; 21 Ala. 797; 17 Ala. 55.

STONE, J.—All the questions presented by the record in this case, arise on the admissibility of rebutting evidence. They are all of kindred character. Each piece of evidence which was admitted against the objection of defendant, tends to prove some act done after the attachment was levied, and after this suit had been instituted. The questions may, then, in the main, be considered together.

The attachment was issued against the effects of W. Nicholson. It was levied on property belonging, as it is asserted, to Tool and C. Nicholson. The whole controversy in the circuit court hinged on the inquiry, had W. Nicholson sold the effects levied on, to the plaintiffs, before the attachment was levied? and was that sale *bona fide,* or fraudulent? This inquiry necessarily opened a wide field for exploration.

For the defendant, it was competent to prove every fact and circumstance which tended to show that the transaction was not in good faith, or was in secret trust for the benefit of W. Nicholson, the grantor. In this connection,

we cannot say that the circuit court permitted the examination by defendant to take too wide a range. The insolvency of W. Nicholson—the property and means of Tool and C. Nicholson—the haste attending the consummation of the contracts—the fact that, reserving only the property which the law exempted to him as the head of a family, W. Nicholson sold and parted with every piece and parcel of property which he owned, including lands, houses, slaves, carriages, house-servants and house-furniture, and retained the possession of much of it, as he had theretofore done; and all this during a few consecutive days, and when the sheriff was levying upon portions of his property under attachments—these necessarily furnished grounds for argument against the validity of the transfer; grounds from which, if unexplained, a jury might be urged to infer that there was a secret trust. They all tended, by cotemporaneous conduct, to shed light on the transaction which was directly in issue.

But we need not inquire whether each of these several transactions was legal evidence for defendant. The court admitted them; and under a well settled rule of this court, if illegal evidence be given in against a party, he will be permitted to rebut that evidence.—Nelson v. Iverson, 24 Ala. 9; and see authorities on the brief of counsel.

[2.] We think the rebutting evidence introduced by plaintiffs, and objected to by defendant, was, in each instance, admissible. It tended proximately to prove two propositions, either of which justified its reception: first, that Tool and C. Nicholson possessed the requisite means to purchase and pay for the goods; and, secondly, it tended to rebut the imputation that there was a secret trust for the benefit of W. Nicholson. The fact that these transactions occurred *post litem motam*, weakened their influence for the latter purpose; but this was the proper subject of a charge. We have, on this record, to deal only with the relevancy of the evidence. Its sufficiency and effect are not presented for our consideration.—Pennington v. Woodall, 17 Ala. 687; McCaskle v. Amarine, 12 Ala. 17, 24; Lanier v. Br. Bank, 18 Ala. 625.

Judgment affirmed.