W. R. Thompson for plaintiff.

---

<div style="margin-note">
CHANCERY.

Case 73.

April 16.

Case stated in the bill.
</div>

## Marshall and Spears vs Hutchison, &c.

### APPEAL FROM THE BOURBON CIRCUIT.

Fraudulent conveyances.    Specific execution of contracts.

JUDGE BRECK delivered the opinion of the Court.—Judge Marshall did not sit in this case.

THE appellants exhibited their bill against James E. Hutchison, Joseph Tucker, and Caleb Morris, setting up claims upon Hutchison and charging him with having made a fraudulent disposition of his property, with a view to hinder, delay, and defraud his creditors, and more especially in the pretended sale and conveyance of two hundred and fifty acres of land to the defendant Tucker. They obtained an attachment against the land, prayed that the conveyance thereof to Tucker, might be set aside, and that it might be subjected to the payment of their debts.

The Circuit Court dismissed their bill with costs, and to reverse that decree they have appealed to this Court.

The particular allegations of fraud in the bill are, that Hutchison, an insolvent debtor, made the conveyance to Tucker upon a consideration, if not altogether, to a very great extent, false and pretended, and that Tucker and Morris, being his brothers-in-law, confederated with him in the fraudulent arrangement, for the purpose thereby of hindering, delaying, and defrauding his creditors.

The deed from Hutchison and wife to Tucker, made an exhibit by the complainants, bears date the 24th January, 1842, was duly acknowledged by Hutchison on the same day, and on the day following by his wife, and re-

corded. It purports to be for the consideration of $12,-
914 91, in hand paid, and contains, also, this further re-
cital: "The consideration of this deed is made up of the
sum of $9,451 owing by said Hutchison to said Tucker,
$1,796 25 Tucker assumes to pay Caleb Morris, and
$1,666 66, he assumes to pay James Robinson, he being
already Hutchison's security for that sum to said Robin-
son."

The complainants charge that Hutchison was not in-
debted, if at all, to Tucker and Morris, in any thing like
the sums thus recited in the deed.

Tucker, in his answer, admits the insolvency of Hutch-
ison, and that the debt due him at the date of the deed,
is overstated more than $2,000. As to the debts to Mor-
ris and Robinson, he believes them to be correctly stated.
He then makes the following explanation as to Hutchi-
son's indebtedness to him, his purchase from him of the
land in controversy, and the execution of the deed.

That his wife, an elder sister of Hutchison, had been
in the habit ever since her marriage, of taking in weav-
ing, and of manufacturing janes and linsey, &c., selling
it in her own name and on her own account, and of ap-
propriating the proceeds as she pleased, to her separate
use. That she had also been in the habit of loaning mo-
ney and taking notes payable to herself: That she and
her brother, the defendant, had had dealings for many
years; she had done weaving for his family, sold him ar-
ticles of her manufacture, and loaned him money at va-
rious times. That a large sum was also due his wife
from her brother, as the executor of his father, which she
had received or taken his note payable to herself for the
amount. That on the 23d January, 1842, his wife held
two notes upon said Hutchison, one dated in August,
1841, for $5,494, and the other dated about same time,
for $568. He believed these to be just debts, then due,
and wholly unpaid. That he himself, at same time, held
a note upon the defendant, Hutchison, for $1,157 24,
dated and due the 29th February, 1840, which was also
a just debt. That on the said 23d January, 1842, Hutch-
ison came to his house and informed him of his embar-
rassments and of his intention to surrender up his prop-

erty, and proposed to secure the amount due him, Tucker, and wife; by a mortgage upon his slaves, and to *cover* up $2,000 for the benefit of his wife and children; requesting to see the notes which they held on him, he wrote a new note for $1,389 for the one for $1,157, calculating the interest at 10 per cent. the rate agreed upon when it was given. He then wrote a note for $7,454, payable to Mrs. Tucker, in lieu, as stated by him, of the one she held on him for $5,494.

That upon consultation after Hutchison left, he and his wife agreed that the arrangement proposed would be improper, and that he should not go into it. On the day following, he saw Hutchison and informed him of the dissatisfaction with the proposition of the day preceding, and refused to go into it or any arrangement of the kind. He then proposed to purchase from Hutchison the two hundred and fifty acres of land at $50 per acre. The notes for $5,494 and for $568, to Mrs. Tucker, and the note to himself for $1,389, to go in payment. That he would also pay Morris his note on Hutchison, amounting with interest, to $1,796, and would also pay the note to Robinson for $1,666 66, for which he was security; the balance to be paid, provided the wife of Hutchison relinquished her right of dower and not otherwise, and to be paid to her. That Hutchison acceded to this proposition and the deed was executed in pursuance thereto. That Hutchison, before he saw him on the 24th, had furnished the draftsman of the deed with a memorandum of the notes held on him by Tucker and wife, for the purpose of having a deed of trust or mortgage drawn upon his slaves, to secure the payment thereof; discovering that the note of the preceeding day for $7,494, had been put down, instead of the one for $5,494, he suggested to Hutchison that it was wrong and he would *not stand it*. That some conversation passed between Hutchison and the draftsman, and he supposed the alteration would be made, but when the deed was read, he discovered it had not been done. He was then unwilling to inform the draftsman that the amount of the note had been mis-stated by Hutchison, not knowing what had passed between them upon the subject, and believing that it would be a need-

less exposure of Hutchison at that time, and that it would do no harm in the deed, and on that account he suffered it to remain.   That he then and still believed he was paying more for the land than it was worth.   He denies all fraudulent action or intent in the execution of the deed, and from the explicit agreement with Hutchison, he believes no fraud was intended by him.   That he believed at the time, the amount appropriated for the dower of Mrs. H. was not more than a just proportion.   That he was desirous to save his debt and also the debt due his wife, and that he made the purchase and took the deed for that purpose.

We have been thus particular in regard to the answer of the defendant, Tucker, inasmuch as we think the case turns very much upon the facts stated by him.

The answer of Hutchison corresponds substantially, in all the material facts, with that of Tucker.   He states that the two notes *to* Mrs. Tucker, the one for $5,494, and the other for $568, were subsisting and just debts; and he goes somewhat into detail in reference to their origin and the items of which they were composed.   That the debts to defendants, Tucker and Morris, and Robinson, were also just.   That although greatly in debt, his failure to him was sudden and unexpected.   That being anxious to save from the general wreck of his property, a small portion for the support of his wife and children, he hastily concluded to place in the hands of his sister, Mrs. Tucker, $2,000, and to secure her and her husband by a mortgage upon his slaves.   To this arrangement his sister did not consent, but understanding her husband as consenting, he executed a note to her for $7,494, in place of the one which she held on him for $5,494.   This was on the 23d January, 1842, and on the day following he made out a statement of his liabilities to Tucker and wife, and gave it to the draftsman of the deed to prepare a mortgage.   In this statement he put down the note which he had drawn for $7,494.   But before the writings were drawn, the defendant, Tucker, saw him and told him his wife had not consented to the proposed arrangement of the day before, and said she believed it would be

MARSHALL, &c. *vs* HUTCHISON. &c. fraudulent, and that he would not go into it or any arrangement of the kind.

The proposition to purchase the land he states as stated by Tucker, with this difference, that besides the amount to be paid to his wife for her dower, Tucker proposed to make her a donation of a thousand dollars more. That the deed was drawn according to the memorandum furnished the draftsman for the mortgage, so far as related to the amount of the debt to Tucker and wife. He supposed near $2,000 would be going to his wife for her dower, and that the statement of the amount of the Tucker debt would not be material. But he states explicitly, that the proposed arrangement by him in reference to the $2,000, had been abandoned when the deed was drawn, and that said sum, except as compensation for his wife's dower, constituted no part of the consideration for the deed.

He admits the justice of complainant's demand, and denies any fraudulent intent to hinder and delay them in the collection thereof. Tucker subsequently took the deposition of Hutchison, in which he adopts, as part of his testimony, his entire answer.

Morris's answer. In regard to the answer of defendant, Morris, who also married a sister of Hutchison, it need only be remarked, that he denies all fraud, insists upon the justice of his debt, and that he has a lien upon the land for the payment of it.

Proof in the case. The only testimony taken by the complainants, was that of the Commissioner, who took in the defendant, Tucker's property for taxation. This witness proves that in 1840, he gave in under the equalization law, $2,500, in 1841, $3,000, and in 1842, $2,500. The list for the year 1842, was taken on the 12th January, and Tucker assigned as a reason why he gave in less under the equalization law than in the preceding year, that he expected to lose some portion of the debts due him. That he administered to him the usual oath, that the list given in by him was a true list of all his property subject to taxation. That some time after the institution of this suit, he gave in an additional sum under the equalization law of $7,500.

On the part of the defence, the land is proved not to have been worth, at the time of the conveyance to Tucker, exceeding thirty six dollars per acre.

In reference to the two notes to Mrs. Tucker, in addition to the testimony of the defendant, Hutchison, it is in proof that she had been a very industrious and economical woman, and that an agreement had long existed between her and her husband, that she was to control and manage as she pleased, the proceeds of her domestic manufacture, and also the money coming to her from her father's estate, amounting in 1837, to about $2,400, and was finally to dispose of what she might thus acquire as she thought proper. Under this arrangement she had been for twenty years, extensively engaged in the manufacture of jeans, and linsey, and linen, which she had disposed of in her own name, occasionally forwarding and vending articles thus manufactured by her, in Pittsburg, Cincinnati, and elsewhere. That the proceeds of her industry and enterprise, in this way, sometimes exceeded five hundred dollars a year. That she had also been in the habit of loaning money and taking notes in her own name, and in a word, of trading and managing her business like an unmarried woman. It further appears, that for many years, she had been in the habit of furnishing her brother, the defendant, with articles of her manufacture, of weaving extensively for his family, and of loaning him money; and about two years before his failure or the conveyance of the land in contest, she held notes on him for largely over five thousand dollars. But without prosecuting the enquiry further in regard to the reason why the two notes in question were made payable to Mrs. Tucher, and the means she possessed of raising debts of such magnitude against her brother, it is sufficient to say we are satisfied that they were payable to her under the arrangement between her and her husband, and that they were just debts.

Whether a fund acquired by her under such circumstances, would in equity, be treated as her separate property, it is not necessary to decide. It is evident from the testimony, it was so regarded by her and her husband,

and we think it may be fairly infered, that in giving in his property for taxation, he so considered and treated it.

As to the note held by defendant, Tucker, in his own name, and the debt to Morris and Robinson, and which Tucker assumed to pay, in part consideration for the land, we think they are sustained by the testimony.

It is true in all the notes, except the one to Robinson, there is included usurious interest to a considerable amount; but that fact we deem unimportant in this controversy, as there is no evidence that it was included with any intention, by thereby swelling the demands, to prejudice or defraud the complainants or other creditors of Hutchison.

We come to the conclusion, then, that the actual amount due Tucker, or Tucker and wife, from Hutchison, at the execution of the deed, was $7,451, and including interest upon the notes to Mrs. Tucker, it would be $7,612. This sum, with the amount Tucker assumed to pay Morris and Robinson, would amount to over $11,000, which exceeds the highest estimate of the value of the land, upon the supposition that there was only two hundred and fifty acres in the tract, and there is neither allegation nor proof that there was any more, by upwards of two thousand dollars. It seems to us, therefore, that in point of fact, there was no inadequacy of consideration, to say nothing of the amount stipulated to be paid to Mrs. Hutchison for her dower.

But it is insisted by counsel, that the purchase of the land was virtually carrying out, or an attempt to carry out the clearly fraudulent proposition of Hutchison on the 23d. That the amount, or nearly the amount proposed by Hutchison to be placed in the hands of his sister, for the benefit of his wife and children, was attempted to be secured to her in the sale of the land, besides the promised donation of a thousand dollars.

Tucker, as we have seen, states explicitly, in his answer, and Hutchison in his answer and deposition, that the proposition of the preceding day had been abandoned before the contract was made for the land. The testimony of Hutchison, equally important to the complainants as to the defendant, Tucker, as without it they have no

evidence whatever of their demands against him, is wholly unimpeached, except so far as it is affected by facts and circumstances, which he himself discloses. The proposition made by him on the 23d, the misrecital in the deed, and the solicitude he may be presumed to feel that his wife should obtain the provision made for her, as well as the promised donation, are certainly calculated, to some extent, to impair his testimony. But, in our opinion, they do not destroy it. It is still entitled to consideration, and we think it sufficient to sustain the answer of the defendant, Tucker. We assume, then, that the arrangement of the 23d, was abandoned, that Tucker refused to go into it, and that the contract for the land was as stated by him. The donation of a thousand dollars promised by him, we do not understand as constituting any part of the consideration of the land. The consideration to be paid for the land was fifty dollars per acre, exceeding its real value, according to the highest estimate put upon it by any witness, $3,500. After taking out the debt due Tucker and wife, and the debts to Morris and Robinson, the residue was to be paid, provided Mrs. H. relinquished her right of dower, and not otherwise, and to be paid to her. Assuming as we do, that the debts to be appropriated in payment, were subsisting just debts, and that they exceeded by two thousand dollars the real value of the land, did the provision made for Mrs. H. render the contract void? Can that portion of the contract be regarded as a fraud upon creditors? It is so contended by counsel, and with much zeal and seeming confidence, but we think it cannot be so regarded.

It is true the amount stipulated to be paid Mrs. H. for her dower, as well as the promised thousand dollars, may have had an influence upon Hutchison in inducing him to sell Tucker the land. But of this influence we think the creditors of Hutchison have no just cause of complaint. The doctrine is well settled, that an insolvent debtor, in the disposition of his property, has a right to discriminate among his creditors—to provide for part to the entire exclusion of the residue. Tucker was paying largely more for the land with a perfect title, than it was worth, besides the amount to be paid for the dower. But indepen-

A conveyance of land made to one creditor to the exclusion of others, for the payment of debts justly due, at a price greater than is shown to be its real value, is not to be held fraudulent, because the purchaser assumed to pay to the separate use of the wife of the debtor, a sum of money

MARSHALL, &c.
vs
HUTCHISON, &c.

above the real
value of the land
for her relin-
quishment of her
dower right.

An insolvent
debtor in the dis-
position of his
property, has the
right to dis-
criminate be-
tween creditors,
and provide for
part, to the ex-
clusion of oth-
ers.

dent of this, Mrs. Hutchison's right of dower was an incumbrance upon the title, which she alone could remove. She had a right to release the incumbrance—to dispose of her interest for her separate use and benefit, and which, more especially in the falling fortunes of her husband, she would be justifiable in thus appropriating. The fact that the arrangement for her benefit, was made in the first instance by her husband, does not vary the case. It cannot be deemed fraudulent in the husband to make reasonable provision for the wife, in the disposition of his property, in which she has an interest—such provision is no surrender of his rights, nor abridgement of his means, as the interest of the wife could not be reached by him, nor his creditors. When first informed of the sale of the land, Mrs. H. refused to relinquish her dower, and we think it sufficiently appears from the evidence, that she was only induced to do it upon the assurance given her by Tucker, that he would pay her for her relinquishment as stipulated in the contract with her husband. Whether the amount to be paid for the dower, was more or less than its real value, is not shown, nor does the record contain the requisite facts to enable us satisfactorily to determine. But even if it be conceded that it did exeed the real value, still, as a much larger amount besides was paid the husband than the land was worth, creditors would have no right to complain. Tucker makes the proposition to purchase, offers to pay Hutchison a fair, high price for the land, and besides, to pay his wife near two, and including the promised thousand, near three thousand dollars more for her dower. In acceding to this proposition, Hutchison makes no sacrifice of his property, and does no injustice to other creditors, except so far as giving a preference to some over others may be regarded as unjust. Had the proposition been limited to the $11,000 in debts, or about that sum, which was unconditionally to go in payment, and had contained no provision in regard to Mrs. H. for her dower, and it had been acceded to, and the conveyance made accordingly, there would be no doubt as to its validity.

But it is further contended, that the attempted provision for Mrs. H. was wholly invalid—that nothing in fact

was secured to her—that the promise to her husband to pay her, or the assurance given her, left the fund still the absolute property of the husband. It is true the usual and safer mode of securing it to her would have been by the intervention of a Trustee. But when the wife, as in this case, has surrendered her interest in land, upon the assurance and promise of the vendee or grantee, made with the assent of the husband, to pay her the estimated value thereof, we are not prepared to decide that a Court of Equity would not specifically enforce such an arrangement, and place the fund in the hands of a Trustee for her separate use. We feel very sure that a Chancellor, under such circumstances, would afford no aid to the husband or his creditors, in seizing upon it to the exclusion of the wife. It still remains in the hands of Tucker, and whether Mrs. Hutchison can or not obtain it, need not here be decided. It is sufficient that there was neither fraud nor injustice in the effort to secure it to her, and that Tucker expresses a willingness to pay it over to her, or otherwise, if so decreed.

In conclusion, we need only remark, that although the circumstances relied upon in support of the allegations of fraud, are calculated to throw some suspicion upon the transaction, yet when considered in connection with all the facts in the case, they are deemed insufficient to invalidate the conveyance.

Wherefore the decree is affirmed.

*Harlan & Craddock and Hawes & Williams* for appellants; *Robinson & Johnson and Smiths* for appellees.

Where the wife of an insolvent debtor has been induced to relinquish her dower in his land under an assurance from the vendee that he would pay a compensation therefor, to her own use— Would not the Chancellor, enforce such an agreement? Or would the Chancellor seize upon and appropriate such fund to the satisfaction of the debts of the husband? ARGU.