## McALPINE vs. THE STATE.

[INDICTMENT FOR ARSON.]

1. *Discontinuance; what prevents.*—A general order, made before the final adjournment of the court, continuing all causes not otherwise disposed of, is sufficient to prevent a discontinuance, although section 162, page 342, in Clay's Digest, is omitted in the Revised Code.
2. *Charge to jury; what erroneous.*—A charge in writing requesting the court to instruct the jury, that unless they believe from the evidence, *to a moral certainty*, that the defendant is guilty, they can not convict him, is an improper charge, and should be refused.
3. *Same*—The charge of the court should be confined to the evidence, and if the court, in a criminal case, states to the jury a purely hypothetical case, and asks the jury what is the presumption in such a case, the charge will be erroneous, as tending to mislead the jury.

APPEAL from Circuit Court of Greene.
Tried before Hon. JAMES Q. SMITH.

The facts are sufficiently stated in the opinion.

W. J. WEBB, for appellant.—1. It appears that the indictment was pending for two years in said court, (between the finding and the trial) during which time four regular terms of said court intervened, to which the suit or case was not regularly continued by any general or special order.

2. The court will take judicial notice of the terms of said court.—See Code, p. 233; 17 Ala. 229; 26 Ala. 461.

3. There is no section of the Code which provides for the continuance of cases by operation of law, or otherwise

than by order of court. The statute found in Clay's Digest, p. 342, § 162, "for the continuance of cases to the next term," has not been re-enacted by the Code. Section 4150 of the Revised Code provides only for the dismissal or discontinuance of indictments, by permission of court, and does not apply to discontinuance by the failure of the State to prosecute the case.

4. The question now presented must be decided by the rules of the common law. At common law, "when there was a failure to continue the case to the next adjourned term of the court, and one or more terms elapsed or intervened, the suit was held to be discontinued."—See Hawk. Pl. p. 416, § 84; *ib.* p. 417, § 86; 1 Chitty's Crim. Law, p. 363, m. 364–365; *Drinkard v. The State*, 20 Ala. p. 9; *Ex parte Rivers*, 40 Ala. 712–714, in which it was held, "that at the common law a chasm or gap in the proceedings, by neglect to continue the cause, is a discontinuance of the action, and entitles the defendant to a discharge. Such undoubtedly is the rule in civil actions, (5 Ala. 677), and the rule would be even more strictly held and enforced in criminal cases.—See authorities cited, *supra ; Ex parte Hall,* at present term.

5. If it be insisted that defendant waived his right to make this objection on appeal, or by failure to move in arrest of judgment, we reply that any error, to arrest the judgment, must appear on the record, and if it appears of record, it is an error on appeal which will work a reversal.

6. This court will not indulge any presumption against the defendant to cure or sustain the defect of the record, but favoring the liberty of the citizen, will require the record to show that the judgment and proceedings were legal and regular.

7. The court erred in refusing the written charge asked by the defendant. The evidence set out in the bill of exceptions, and referred to in the said charge, show that the State relied solely on circumstantial evidence for a conviction, and that the "tracks" or "slewfoot" was the link by which the defendant could or must be connected with the perpetration of the crime. And therefore the jury must

be satisfied by the evidence, to a *moral certainty*, that they were tracks of the defendant before they could convict, whether they believed the evidence of the defendant's *alibi* or not.

J. W. A. SANFORD, Attorney-General, *contra*.

PECK, C. J.—The indictment, in this case, consists of two counts. The first charges that George McMills McAlpine willfully burned a mill-house and granery, with the mill and machinery therein contained, which was of the value of more than five hundred dollars, the property of John W. McAlpine.

The second count charges that George McMills, *alias* George McMills McAlpine, willfully burned a building, used for the time as a cotton-house, with the property therein contained, of the value of more than five hundred dollars, the property of John W. McAlpine, against the peace and dignity of the State of Alabama.

This indictment was found at the fall term, 1869. It does not appear whether the defendant was in custody when the indictment was found, nor does the record show when he was arrested, or how he was brought into court; but at the spring term, 1870, the cause was continued by the defendant. After this, to the trial term, 1871, being the fall term of the court, the record does not show any special continuance of said cause by name, but at each succeeding term there was a general order made continuing all causes pending in the court. It is also shown that the defendant appeared at the trial term, in his own proper person, and was then arraigned on the said indictment, and pleaded not guilty, was tried and convicted, no objection being made that the cause was discontinued. It is now objected by the defendant's counsel, that the cause was then discontinued, and that therefore the defendant was erroneously tried, and that the judgment should now be reversed for that error. We think this objection not only comes too late, but that if it had been made at the time the defendant was arraigned, it should have been overruled; that his appearing and pleading, without objection, was a

waiver of the supposed discontinuance.—*Ex parte Hall*, at
the present term. Although the old provision in Clay's
Digest, p. 342, § 162, which authorized the continuance of
all causes pending and not disposed of, by a general order
for that purpose, is omitted in the Revised Code, yet, as the
practice has been continued, notwithstanding such omis-
sion, a general order ought now to be held sufficient to con-
tinue all causes not disposed of before the general adjourn-
ment of the court. This practice not only prevails in the
circuit courts, but it is also the practice in this court; and
to put an end to any doubts on the subject, we hereby re-
cognize it as the settled practice in this State.

After the evidence was closed, the court, without any re-
quest by either party, gave two charges to the jury, neither
of which seems to have been excepted to. The defendant
then asked the court to give the following written charges
to the jury, to-wit: "That unless the jury are satisfied by
the evidence, *to a moral certainty*, that there were *slew-footed*
*tracks* going from the mill-house, and that those tracks were
made by the defendant George, they can not find the de-
fendant guilty; and this is so, whether the jury believe the
evidence tending to prove an *alibi* or not."

The court refused to give this charge as asked, and the
defendant excepted.

This charge seems to have been based upon the follow-
ing statement in the bill of exceptions, to-wit: "In the
progress of the trial, the State offered evidence tending to
show that there were tracks of a person found leading from
the lot gate, or bars, near the quarter, *towards* the mill, and
also tracks *from* the mill, towards the road; that said tracks
were peculiar, or different from the tracks of other persons,
in this, to-wit: that the right foot was *slewed*, or twisted
out, and was a flat track, about No. 9 in size. The defend-
ant's counsel cross-examined the State's witnesses about
the tracks, and asked them how they knew or identified the
defendant's tracks, and to describe any other peculiarity
about said tracks. The witnesses were unable to give any
other peculiarity of the tracks, but all of them stated they
knew the tracks to be the tracks made by the prisoner;

some of the witnesses having known the prisoner from a child." Evidence was also offered by the defendant tending to prove an *alibi*.

There was no error in overruling said charge. In criminal cases, the jury may very properly be charged, that if after considering all the evidence, they have a *reasonable doubt* of the defendant's guilt, it is their duty to acquit him; and it is an error to refuse such a charge, when asked. In favor of life and liberty, such a charge has always been recognized as a legal charge, although no rule can be laid down by which to determine, with any degree of certainty, what a reasonable doubt is, or whether it does or does not exist in any particular case. Every case must, necessarily, be left to the good sense and conscience of the jury. Some times judges undertake to instruct juries what a reasonable doubt is, and some times what it is not. We think all such efforts, to say the best for them, are unsafe, indiscreet, and oftener than otherwise distract and confuse juries, and may lead them to convict when they ought to acquit, or to acquit when they ought to convict. We know of no case by which a charge like the one asked has ever been recognized as a legal charge; no one in which such a charge was ever before asked. Its very novelty was a sufficient reason for its refusal. It is a maxim of the law, that "the old way is the safe way." The courts will not sanction speculative novelties, without the warrant of some principle, precedent, or authority.—Broom's Legal Maxims, m. p. 136.

The bill of exceptions also states, that "in the progress of the trial there was evidence, by the witnesses of the State, to show that the defendant, before the burning, had made certain threats, that he would burn the cotton in said mill; that the judge, in charging the jury on the matter of previous threats to burn the mill and cotton by the defendant, said, 'If it be true, that threats were made by the prisoner, immediately before the burning, that he would burn the mill and cotton, and it appears the object of the threat is destroyed by fire, what is the presumption, when taken in connection with all the other circumstances tending to show he was at or about the place of burning at

the time of the fire?'  The judge also said, in speaking of said threats, 'if a man says he is going over to the hotel to cut a man's throat, and he goes to the hotel and the man's throat is found immediately cut, what is the presumption from the threats?'  To these declaration and questions of the court the defendant excepted."

We have no hesitation in saying, these declarations and questions addressed to the jury in the manner here stated were improper.  The court may correctly charge the jury, that certain evidence, if believed by them, raises a presumption of. guilt.  Such a charge, in this case, might have aided the jury to come to a correct conclusion; but these declarations and questions must, almost necessarily, have confused and misled the jury, to the prejudice of the defendant.  A charge should be confined to the evidence in the case.  It is error for the court to state a mere hypothetical case in its charge, and then ask the jury what would be the presumption in such a case.  The minds of the jury might, and would, probably, thereby be withdrawn from the consideration of the case made by the evidence, to the supposed case put by the court.  As the course pursued by the court may have had an improper influence upon the jury, to the injury of the defendant, the judgment must be reversed, and the cause remanded for a new trial.  The defendant will remain in custody until discharged by due course of law.