# Harmon *v.* McRae.

### *Trespass against Sheriff and Attaching Creditor.*

1. *Wrongful levy of two or more attachments at one time, as cause of action.*—If the sheriff levies two or more attachments, in favor of different creditors, at the same time, and on the same property, he is regarded as their common agent, though each creditor was endeavoring to secure a priority of lien; and if the levy was wrongful, but one action for damages can be maintained against him.

2. *Conveyance by insolvent debtor to creditor; validity as against other creditors.*—An insolvent debtor may sell and convey his entire stock of goods, with outstanding notes and accounts, in payment of an antecedent debt; and the validity of the sale will be sustained against the attack of other creditors, if it appears that the debt was *bona fide*, its amount not materially less than the reasonable value of the property, and that no use or benefit was secured or reserved to the debtor.

3. *Same; what constitutes antecedent debt.*—If a father procures a loan of money for his sons, giving his own note with them as co-makers, and a mortgage on his property to secure it, and afterwards assumes the debt by agreement with them, and releases them from all liability on account of it; this constitutes him their creditor, and authorizes a purchase by him of their entire stock of goods, as any other creditor of an insolvent debtor might.

4. *Same; computation of indebtedness.*—If the insolvent debtor has a cross-claim against the purchasing creditor, the amount of it should be deducted from his debt, and only the balance be considered as the amount due the creditor; or, if a surety thus assumes to pay the debt

26

| | |
|---|---|
| 91 | 401 |
| 93 | 63 |
| 91 | 401 |
| 95 | 203 |
| 95 | 219 |
| 91 | 401 |
| 96 | 176 |
| 96 | 495 |
| 97 | 382 |
| 91 | 401 |
| 101 | 50 |
| 91 | 401 |
| 104 | 491 |
| 91 | 401 |
| 117 | 231 |
| 118 | 341 |
| 91 | 401 |
| 135 | 217 |

[Harmon v. McRae.]

of an insolvent principal, his own indebtedness to his principal should be deducted in estimating the consideration paid on the purchase. "Any other rule would tend to hinder, delay, and defraud the creditors of the insolvent debtor, and would render the transaction fraudulent as against existing creditors."

5. *Same.*—If the purchasing creditor, being the father of the insolvent debtors, when he procured a loan of money to aid them in their business, held a claim against one of them individually, and it was at the time agreed among them that he might take up goods from their store in satisfaction of that debt, the debts of other creditors not having been then created, they have no right to charge him with the price of goods taken under this arrangement, in reduction of the debt assumed by him for his sons as partners.

6. *Same.*—The fact that the purchasing creditor, when assuming the payment of the debt secured by the note and mortgage, and releasing the debtors from liability on account of it, believed that the amount actually due was less than that expressed, and was to retain the excess in value of the goods, would not render the transaction void, since a court of equity might reach and subject such excess, if any.

7. *Same; relationship of parties; charge invading province of jury.* In considering a transaction between parent and child, when assailed for fraud by creditors, the jury should make due allowance for the relationship; but a charge instructing them that, "if the testimony in support of the conveyance is not stronger in degree than that which would be necessary to satisfy a reasonable man had the transaction been between strangers, then it is not sufficient in law to uphold a conveyance between father and sons," is properly refused, because invading the province of the jury.

8. *Abstract or misleading charges,* which assert correct legal propositions, are not ground of reversal, unless it affirmatively appears that the jury were thereby injuriously influenced.

APPEAL from the Circuit Court of Bullock.

Tried before the Hon. JESSE M. CARMICHAEL.

This action was brought by John F. Harmon, against C. M. McRae, Ignatius Pollak, and D. Fleming, to recover damages for an alleged trespass in making a wrongful levy on a stock of goods; and was commenced on the 3d January, 1888. McRae was the sheriff of the county, and levied an attachment on the stock of goods, on the 6th January, 1887, as the property of Harmon Brothers, a mercantile partnership then or lately doing business in Union Springs; Pollak being the plaintiff in the attachment, and Fleming his surety on a bond of indemnity given to the sheriff. McRae pleaded in abatement the pendency of another action brought by the plaintiff against him, W. F. Vandiver, and R. R. Henderson, to recover damages for an alleged trespass in levying an attachment in favor of said Vandiver on the same stock of goods; alleging that the two attachments were sued out and placed in his hands on the same day, and were levied by him at one and the same time, and that said levy was the act complained of in each action as a trespass. The court overruled a demurrer to this plea, and, on the evidence adduced, sustained it, and rendered

judgment dismissing McRae. The other defendants pleaded not guilty, and issue was joined on that plea.

The firm of Harmon Brothers was composed of T. B. Harmon and R. L. Harmon, sons of said John F. Harmon, and commenced to do business as partners on the 3d February, 1885. The plaintiff claimed the stock of goods as a purchaser from them, and he produced their bill of sale to him. which was dated December 31st, 1886, recited as its consideration the present payment of $5,000, and described the property conveyed as follows: "Our entire stock of merchandise of every description, including fixtures of every kind; also, one iron safe; all of said property now in the store-house occupied by said Harmon Brothers in Union Springs; also, for the consideration aforesaid, we do hereby transfer and assign to said John F. Harmon all accounts, notes and mortgages now due us, and all other property of all other kind." At the same time, and as part of the same transaction, the plaintiff executed a written instrument which was produced on the trial, in these words: " *Whereas*, I, John F. Harmon, on the 26th January, 1886, did execute to Lehman, Durr & Co. a mortgage on my plantation in Pike county, Alabama, to secure an indebtedness of $5,000 due them by my sons, T. B. and R. L. Harmon ; *and whereas*, Lehman, Durr & Co. claim that said sum of $5,000 is still due and unpaid, and are seeking to foreclose said mortgage by selling said plantation, and said T. B. and R. L. Harmon are unable to pay said amount so claimed to be due by them ; *and whereas*, said T. B. and R. L. Harmon have agreed, on my entering into this undertaking, to sell and deliver to me their entire stock of goods, wares and merchandise, and all notes, accounts and mortgages, and all other property of every kind belonging to the firm of Harmon Brothers : *Now*, in consideration of the premises, and the delivery of said goods, wares and merchandise, notes, accounts, mortgages and other property, I, the said J. F. Harmon, do covenant and agree with the said T. B. and R. L. Harmon that I will forever hold them harmless against the payment of said sum of $5,000, claimed to be due as aforesaid, or any part of the same; the true intent of this agreement being, that, for the consideration aforesaid, I hereby assume the payment of whatever amount may be found to be due to said Lehman, Durr & Co. by said T. B. and R. L Harmon, for the payment of which I am surety as aforesaid, and agree to hold them harmless against the same. In witness whereof," &c.

The defendants attacked the validity of this sale and conveyance, on the ground that it was fraudulent as against the creditors of Harmon Brothers; and they proved that

Harmon Brothers were insolvent at the time, owing debts to Pollak, Vandiver, and others, aggregating about $8,000. The material facts shown by the evidence, bearing on the questions involved, are stated in the opinion of the court, and it is unnecessary to repeat them. The following charges, to which the plaintiff excepted, were given at the instance of the defendants:

"(1.) If the jury believe from the evidence that, at the time of the sale by Harmon Bros. to the plaintiff, he, the plaintiff, was indebted to Harmon Bros. on account of merchandise sold by them to him, in about the sum of $1,500; that in making such sale they sold the goods to plaintiff to indemnify him on account of a debt he had contracted for their benefit with Lehman, Durr & Co., making no deduction from that indebtedness on account of the debt due by plaintiff to Harmon Bros.; and that on the same day, or afterwards, the account due by plaintiff was settled, except a small balance, by crediting plaintiff's account with the amount of a debt due by T. B. Harmon individually, with interest theereon; then the sale to plaintiff was fraudulent and void as to the creditors of Harmon Bros.; and if the jury further believe that, at the time of the sale to plaintiff, Harmon Bros. were indebted to Pollak & Co., then the jury must find a verdict for the defendants.

"(2.) If the jury believe from the evidence that the plaintiff and his son R. L. Harmon were partners doing business in Pike county in the year 1885, in the name of J. F. Harmon & Son; and if they further believe that the said firm owed a debt to Lehman, Durr & Co. of $750, which Harmon Bros. assumed, and which was charged to them; then Harmon Bros. did not, as against their creditors, have a right to sell plaintiff the stock of goods in payment of a debt due him, without deducting the amount so assumed.

"(3.) If the jury believe from the evidence that the plaintiff contracted a debt during the years 1885 and 1886, amounting to over $1,800; that there was due on said debt, on the 31st day of December, 1886, about $1,500; that at that time Harmon Bros. were insolvent, and that the fact was known to plaintiff at the time he took the bill of sale; and if the jury further believe that Harmon Bros. sold their entire stock of goods, store-fixtures, books, notes and mortgages, to indemnify plaintiff on account of a debt he had contracted with Lehman, Durr & Co., without deducting the debt due Harmon Bros. by plaintiff therefrom, and that on the same day, or a day or two afterwards, they credited the account due by plaintiff with nearly $1,500, the amount of an individual debt due by T. B. Harmon to him; and that this credit was made under an agree-

[Harmon v. McRae.]

ment between the parties; although the jury may believe that
T. B. Harmon agreed some time before that his individual
debt to his father should be paid by goods of Harmon Bros.;
then the sale to plaintiff was fraudulent and void, as against
the creditors of Harmon Bros.; and if the jury further believe
that they were indebted to Pollak & Co. on the 31st day of
December, 1886, then the jury must find a verdict for defend-
ants.

"(4.) If the jury believe from the evidence that the sale
was made by Harmon Bros., and accepted by J. F. Harmon,
for the purpose of hindering, delaying or defrauding Lehman,
Durr & Co., and that Lehman, Durr & Co. were creditors of
Harmon Bros., and of J. F. Harmon; then it would be fraudu-
lent and void as to all other creditors; and if the jury further
believe that Pollak & Co. were at the time of the sale creditors
of Harmon Bros., the jury must find a verdict for the defend-
ants.

"(5.) If the jury believe from the evidence that the agree-
ment between the parties was, that J. F. Harmon was to take
the stock of goods, the fixtures, notes, accounts and mortgages
of Harmon Bros., in payment of the amount that he might
have to pay for them to Lehman, Durr & Co., whether that
amount was $1,500 or $5,000; that it was understood and
agreed at the time between the parties that J. F. Harmon was
to keep all the property and the proceeds thereof, although it
might be determined that the amount due Lehman, Durr &
Co. was only $1,500, or less; then the effect of such a transfer
is to hinder, delay and defraud the other existing creditors, and
it is fraudulent and void as to such creditors.

"(6.) If the jury believe from the evidence that, at the time
of the sale, J. F. Harmon was indebted to Harmon Bros.,
either individually or as a member of the firm of J. F. Harmon
& Son, and that the property was sold to him in consideration
of his holding them harmless against the payment of the sum
of $5,000, which Lehman, Durr & Co. claimed that he owed
them on account of a debt that he had secured for them; and
that in making such sale J. F. Harmon received property in
payment of the full sum due to Lehman, Durr & Co., without
deducting therefrom the amount due by J. F. Harmon to Har-
mon Bros., then such sale was fraudulent and void as to the
other creditors of Harmon Bros.

"(7.) In determining whether J. F. Harmon had money of
his own to purchase the property, and make the improvements
thereon, shown by the evidence to have been purchased and
made in 1887, if such be the fact, the jury may look to the
fact, if it be shown by the evidence, that said Harmon was

borrowing money for some years prior thereto to carry on his farming operations.

"(8.)   The receipt or obligation given in evidence signed by J. F. Harmon does not bind him to apply the goods sold to the payment of the debt due to Lehman, Durr & Co., and was not a sufficient consideration for such a bill of sale or transfer given in evidence.

"(9.)   If the jury shall find from the testimony that it was understood, although not written in the contract, both by Harmon Bros. and by J. F. Harmon, at the time of the execution by Harmon Bros. of the written bill of sale of the stock of goods to J. F. Harmon, as testified to by the witnesses, and at the time of J. F. Harmon's acceptance of said bill of sale, that said sale was for the purpose of indemnifying J. F. Harmon against his liability to Lehman, Durr & Co. for and on account of the mortgage debt, which J. F. Harmon owed to Lehman, Durr & Co., and under which Lehman, Durr & Co. had, in December, 1886, advertised the property of J. F. Harmon for sale; and that it was further understood between said vendors and vendee that, in the event it should be ascertained that there was due to said Lehman, Durr & Co., on said debt, an amount of money less than $5,000, and that in such event J. F. Harmon should pay to Harmon & Brother, or *to their creditors*, the difference between such mortgage debt and the value of said stock of goods; then the sale of said stock of goods was fraudulent and void, and the verdict of the jury must be for the defendants.

"(10.)   If the jury believe from the evidence that there was an agreement between J. F. Harmon and T. B. Harmon that the indebtedness from T. B. Harmon to J. F. Harmon should be applied to the extinguishment of J. F. Harmon's account with Harmon & Brothers, it was not an agreement between J. F. Harmon and Harmon & Brothers which would authorize Harmon & Brothers to credit J. F. Harmon's account with Harmon & Brothers with the amount of J. F. Harmon's account after the contract of the sale of the goods by Harmon & Brothers to J. F. Harmon; and that if such contract or agreement was made with T. B. Harmon alone, without the knowledge of R. L. Harmon, until at or about the time of the said sale of the goods; then such credit rendered such sale fraudulent and void, and the jury in such event must find a verdict for the defendant.

"(A.)   If the jury find from the testimony in the case that the conveyance of Harmon Bros. to their father was simulated, and it was for the purpose of placing their property beyond the reach of their creditors, and not for the purpose of paying

. [Harmon v. McRae.]

their father; it is void, notwithstanding there may have been a debt to their father.

"(B.)   The mere existence of a debt to the father will not uphold the conveyance, if the jury shall find from the evidence in the case that the debt was resorted to as a mere device to get the property beyond the reach of creditors, and not for the actual payment of the debt.

"(C.)   If the jury shall find from the evidence that, at the time of the making of the conveyance, there was an agreement between the parties, to the effect that either of the partners should be retained in the management of the business at a moneyed consideration, then this avoids the conveyance.

"(D.)   If the jury shall find from the testimony that, at the time of the execution of the conveyance, it was made and received by the parties thereto for the purpose, in part, of allowing one or both of the partners of using the whole or part of the proceeds of the goods and property conveyed in their own interest, this avoids the conveyance.

"(E.)   A tacil agreement, to the effect named in the two foregoing charges, is as unlawful as an express one, whether verbal or written.

"(F.)   In determining whether there was an agreement, to the effect that one or both of the partners should be benefitted by the use of the money afterwards, the jury can look to the fact, if it be a fact, together with the other testimony in the case, that one or both of them did collect and receive money arising from the collection of the notes and accounts, and have never accounted for the same, or been called upon to account for the same.

"(G.)   The burden of proving that the conveyance is based upon an actual sale in payment of a *bona fide* debt is upon the plaintiff, Harmon; and if the testimony shows that the transaction attacked was between father and child, the law requires stronger and more convincing proof of these facts, than it does where strangers are the parties to the transaction.

"(H.)   If the testimony in this case, in support of the conveyance, is not stronger in degree than that which would be necessary to satisfy a reasonable man had the transaction been between strangers, then it is not sufficient in law to uphold the conveyance, if shown to be between father and sons.

"(I.)   Should the jury determine that Harmon, the plaintiff, has not come up to the requirements of the law in his proof, in meeting the burden placed on him, this finding does not necessarily determine that he has sworn falsely.

"(J.)   In determining whether the agreement of T. B· Harmon with J. F. Harmon, that the debt of thirteen hundred and

odd dollars due by T. B. Harmon to J. F. Harmon could be traded out by J. F. Harmon with the firm of Harmon Bros., was executed previous to the 31st day of December, or on that day, the jury may look to the fact, if it be a fact, that interest was allowed on the debt up to December 31st; and if it be shown that interest was calculated and allowed on said amount, and that the principal and interest was then, on December 31st, entered as a credit on J. F. Harmon's account, this will show, unless the other testimony in the case overturns such conclusion, that the agreement was not executed until December 31st.

"(K.) If the jury does not find that such agreement was not executed until December 31st, this renders the sale void."

The rulings on the plea in abatement, and the charges given, are assigned as error.

CABANISS & WEAKLEY, and WATTS & SON, for appellant, cited *Dawson v. Vaughan*, 42 Ind. 395; *Adams v. Gardner*, 13 B. Mon. 197; *Foster v. Napier*, 73 Ala. 595; *Smith v. Blatchford*, 52 Amer. Dec. 504; *Carter v. Coleman*, 84 Ala. 256; *Chipman, Calley & Co. v. Stern*, 89 Ala. 207; *Pennington v. Woodall*, 17 Ala. 685; *Gladdin v. Garrison*, 13 Cal. 331; *Little v. Little*, 13 Pick. 426; 15 Mass. 69; 11 N. H. 390; *McWhorter v. Wright*, 5 Geo. 555; 5 B. Mon. 298; 6 John. Ch. 281; 2 T. R. 100.

NORMAN & SON, for McRae, cited *Beach v. Norton*, 8 Conn. 71; *Haight v. Halsey*, 3 Wend. 258; *Davis v. Dunklee*, 9 N. H. 545; *Morton v. Webb*, 7 Vt. 124; *Wales v. Jones*, 1 Mich. 253; 8 Amer. & E. Encyc. Law, 549–50.

ROQUEMORE, WHITE & McKENZIE, RICE & WILEY, and TOMP-KINS & TROY, for the other appellees.

COLEMAN, J.—If several creditors sue out, at different times, separate writs of attachment against a common debtor, and cause them to be *simultaneously* levied by the same officer, the levy being wrongful, they will be regarded as joint wrong-doers, though they may have acted separately, without concert, and each was endeavoring to secure a priority of lien. The wrong in such cases consists in the levy and seizure of the property, which was done by the same officer, at the same time, for each and all of the attaching creditors. They contemporaneously committed the wrong, by a common agent.—*Sparkman v. Swift*, 81 Ala. 233.

Where there is but one taking of personal property by an

officer, upon separate writs of attachment, sued out by two creditors against the same debtor, the taking will be deemed the joint act of the creditors, in an action of trespass brought against them and the officer for the taking.—1 Waterman on Trespass, § 434; *Wehle v. Butler,* 42 How. Pr. Rep. 399; *Ellis v. Howard,* 2 Vt. 334. The authorities are not in harmony, as to whether trespass could be maintained for a second levy, the property being in *"gremio legis"* by virtue of the first levy. In the case of *Ginsberg v. Pohl,* 35 Md. 505, it was declared that trespass could not be maintained for a second levy, the property being in *gremio legis.* See, also, *Scarborough v. Malone,* 67 Ala. 572; *Cordaman v. Malone,* 63 Ala. 558; *McLellan v. Lipscomb,* 56 Ala. 256; 81 Ala. *supra.*

The two suits could not be properly maintained against the sheriff for the levy, though made in the interest of separate creditors, and the plea in abatement to the second suit was properly filed.—*Foster v. Napier,* 73 Ala. 595; 3 Brick. Dig. p. 10, §§ 41, 44. If there had been any conflict in the evidence, or objection by the plaintiff to the action of the court in passing upon the sufficiency of facts introduced in support of the plea, without the intervention of a jury, it would have been proper to have referred the question of fact to a jury. 6 Ala. 873, 171; *Day v. Huckabee,* 60 Ala. 425.

An important question in this case is, whether John F. Harmon was a creditor of Harmon Bros., within the meaning of the law which permits an insolvent debtor to prefer and pay one or more of his creditors by an absolute sale and conveyance of property. To properly understand the relation of the parties, the following facts, as they appear in the record, are here stated: Harmon Bros. applied to Lehman, Durr & Co. for a loan of $5,000, which was refused to them. In order to effect the loan, John F. Harmon executed his promissory note to Lehman, Durr & Co. for the amount, and secured the same by a mortgage duly executed upon his property. The individual members of the firm of Harmon Bros. signed the note with John F. Harmon. The loan was placed to the credit of John F. Harmon by Lehman, Durr & Co., and he then gave his check to Harmon Bros. for the money; and upon this check the money was placed to their credit on the books of Lehman, Durr & Co. The consideration of the conveyance attacked as fraudulent was, that John F. Harmon released and indemnified Harmon Bros. from all liability for this debt, and his assumption to pay and satisfy Lehman, Durr & Co. whatever might be due on the loan, expressed in the conveyance to be $5,000.

In the case of *Proskauer v. People's Savings Bank,* 77 Ala.

[Harmon v. McRae.]

261, it was held : "The mere fact of having become surety on an antecedent bond is not a valuable consideration, sufficient to sustain an absolute conveyance against the creditors of the grantor, the surety incurring no new, additional, or contemporaneous liability; and an absolute conveyance by an embarrassed debtor, secretly intended to operate as indemnity against an antecedent liability on the administration bond, reserves a benefit or use to the grantor, and is fraudulent as to existing creditors." Here, the conveyance was held invalid as against creditors, because there was no "new, additional, or contemporaneous liability;" and for the further reason, that the conveyance, absolute in terms, was intended as an indemnity, and reserved a secret interest to the grantor.

In the case of *Pennington v. Woodall*, 17 Ala. 687, it was said : "Surely, if a surety finds his principal in failing circumstances, he may seek indemnity; and if he can get it by assuming the debt, or even by assuming other debts, it is perfectly fair and lawful for him to do so, so that it is done honestly, and without intention to defraud any one." Here, the deed of trust was executed upon a contemporaneous assumption of a debt of the principal by the surety, and it was held sufficient, in the absence of actual fraud.

A note executed by a principal to his surety, in consideration that the surety assumes to pay the debt of his principal, is based upon a valuable and sufficient consideration. An attachment sued out upon such a note, and levied, creates a valid and prior lien from the date of the levy against existing creditors. A conveyance of property in payment of such a debt, by an insolvent debtor to such creditor, there being no other cause of objection, will be upheld as a valid conveyance. These propositions are abundantly sustained by the following authorities : *McWhorter v. Wright*, 5 Ga. 555; *Marshall v. Hutchinson*, 5 B. Mon. 305; *Roosevelt v. Marks*, 6 Johns. Ch. 283; *Little v. Little*, 13 Pick. 426; *Gladwin v. Garrison*, 13 Cal. 332; 15 Mass. 69; 11 N. H. 390. The case of *Mobile Savings Bank v. McDonnell*, 89 Ala. 441, may be cited as an authority which goes far to support the same principle.

We hold, that John F. Harmon was a creditor of Harmon Bros., within the meaning of the law, and though insolvent debtors, they could prefer him over other creditors by a sale of property, subject to the conditions and restrictions applicable in such cases.

It has been uniformly held, since the case of *Hodges v. Coleman*, that an insolvent debtor may sell the whole or a part of his property in payment of an antecedent debt, and the sale will be upheld, if the debt be *bona fide*, its amount not mate-

rially less than the reasonable value of the property, and no use or benefit secured or reserved to the debtor. The effect of the sale on other creditors, and the intent of the parties, are not material inquiries.—*Knowles v. Street*, 87 Ala. 360. The use and benefit here referred to is that beyond what the law, without such agreement, would secure to him.—*McDowell v. Steele*, 87 Ala. 497. If, by the agreement, the failing debtor secured to himself a paying employment, which, but for the sale and agreement, he would not have had, this was a benefit reserved, which renders the transaction fraudulent. *Stephens v. Regenstein*, 89 Ala. 561.

On the trial, the evidence disclosed that the debt due Lehman, Durr & Co., assumed by John F. Harmon, without interest, was $5,000, and with interest to date of trial was over $6,200. The sale by Harmon Bros. included goods, fixtures, and all notes and accounts; and the entire value of the same, according to the evidence, did not exceed $4,500. The evidence showed that John F. Harmon was indebted to Harmon Bros. in an amount exceeding fifteen hundred dollars, for advances and supplies during the year. There was evidence, also, to show that at the time, and prior to the formation of the partnership of Harmon Bros., an individual member of the firm was indebted to John F. Harmon in the sum of thirteen hundred dollars. The bill of exceptions also states: "The evidence further showed, that all the books, notes and accounts of Harmon Bros., which said notes and accounts did not exceed six hundred dollars, had been delivered to John F. Harmon at the time of the sale." This statement is not controverted. It would, therefore, seem that the debt due Harmon Bros. from John F. Harmon was not included, and did not pass by the sale and conveyance. It was claimed by John F. Harmon that the debt due from him was credited by virtue of an agreement to that effect, with the debt of the individual member of the firm. There was some conflict as to when this agreement was made, and whether it was made with the firm, or with the individual partner who owed the debt to John F. Harmon.

The law defining the conditions and restrictions under which an insolvent debtor may prefer one or more creditors, ought not to be relaxed, or further extended. If the insolvent debtor has a cross-claim against such creditor, the amount of such cross-claim should be deducted from his debt, and only the balance left be considered the proper amount due the creditor; or, if the surety assumes to pay the debt of an insolvent principal, his own indebtedness to his principal should be deducted. Any other rule would tend to hinder, delay and defraud the creditors of the insolvent debtor, and render the transaction fraudulent as against existing creditors.

If, however, when Harmon Bros. began business, and before the debts of the attaching creditors were contracted, it was agreed between Harmon Bros. and John F. Harmon, that the purchases made by John F. Harmon should be paid for by the individual debt of one of the partners, and the goods were purchased with this understanding, this fact would relieve the transaction from the imputation of fraud. Charges 1, 3 and 6 ignore the evidence tending to show that such agreement was made with the firm, and for this reason ought not to have been given. Charge 10 observes the distinction when such a contract was made with the debtor member of the firm, and not with the firm; and under this view of it, the charge asserts a correct proposition of law.

The evidence shows the debt for $716 due Lehman, Durr & Co. had been assumed by Harmon Bros. as a partnership debt, and paid, so far as the evidence discloses, early in the Spring of 1886, and long before the debts of the attaching creditors were contracted. Charge No. 2 ought not to have been given.

Charges No. 4 and 7 were abstract. There was no evidence to support the former, and the principle invoked does not apply. Charge 7 was entirely irrelevant to any issue before the jury. The consideration expressed in the conveyance was five thousand dollars—the obligation was to pay whatever was found due. Although John F. Harmon may have believed on a settlement that not more than fifteen hundred dollars was due, the real amount was unknown and uncertain, and he agreed to pay whatever might be found to be due. The fact that he may have supposed a less amount was due than that expressed, and by the agreement he was to retain the excess in value, would not render the conveyance void. A court of equity might reach and subject this excess. Charge 5 ought to have been refused.

Charge 8 is in conflict with the principles of law declared in this opinion, and should not have been given. Charge 9 should not have been given. An agreement to pay the excess, if any, *to the creditors of Harmon Bros.*, would not render the sale void. There was no evidence of any such agreement, and the charge was abstract.

The conveyance was a fact, and not a "simulation." If the meaning intended was that the property was not to pass by the conveyance, it might have been correct. As written, charge A is bad, and should have been refused. It matters not what the intention or device of the parties was. The question is, did the property pass by the conveyance, and was the effect to pay the debt? Charge B was bad, and should have been refused.

Charges C, D, E, F and G were properly given. In considering a transaction between parent and child, a jury should consider and make due allowance for the relationship; but a charge which requires a jury to determine that the proof, in the case before them, must be stronger than a hypothesized case, is an invasion of the province of a jury. Charge H should have been refused.—60 Ala. 571; *McAlpine v. State*, 47 Ala. 83. Charges I and J are argumentative. We do not understand the purport of charge K as it is written. Charges should be "clear, explicit, and of easy interpretation."—*Hughes v. Anderson*, 68 Ala. 280; 74 Ala. 37.

Some of the charges have been commented on which would not work a reversal, and have been referred to that their faults may be corrected on another trial. A reversal will not result merely because a charge is abstract, or misleading, when it asserts a correct proposition of law, unless it affirmatively appears that such charge injuriously influenced the jury.

Reversed and remanded.